[Civ. No. 15924. Second Dist., Div. One. Jan. 19, 1948.]

MERCHANTS CREDIT ASSOCIATION OF UNITED STATES (a Corporation) et al., Appellants, v. BEN H. BROWN, as Public Administrator, etc., et al., Respondents.

Charles A. Sunderlin for Appellants.

Harold W. Kennedy, County Counsel, Ernest Purdum, J. P. Wright, Deputy County Counsels, Vernon Bettin and Roscoe R. Hess for Respondents.

DORAN, Acting P. J.—The present action for declaratory relief was instituted by the Merchants Credit Association of United States, and Charles A. Sunderlin who is secretary-treasurer of such incorporated collection agency. Mrs. Sunderlin is president of the corporation; Mr. and Mrs. Sunderlin and a married daughter are the directors. As Mr. Sunderlin explained in an opening statement to the trial court: "Merchants Credit Association is simply a corporation to handle such parts of my law business as properly belong to the collection business." The trial court found that this corporation was, indeed, "the alter ego of the plaintiff Charles E. Sunderlin."

The record discloses that one Jack P. Leonard, an attorney at law, died March 23, 1942; that in 1941, Mr. Leonard had instituted three trust deed foreclosure actions for George N. White who died October 16, 1941. Judgments were obtained therein and sales made on August 5, 1941, by the court commissioner. On June 10, 1941, Mr. White had executed a general power of attorney to Jack P. Leonard, "for his use and benefit or benefit of said attorney hereby waiving any accounting therefore whatsoever, and irrevocable; by my demise or otherwise." Referring to this power of attorney, Mr. White had, on July 15, 1941, written to Mr. R. E. Allen, Court Commissioner, as follows: "In order to secure costs of sale, together with attorneys fees and other moneys expended in the foreclosure actions . . . you are hereby authorized and instructed to make sales, and give necessary titles, to my attorney Jack P. Leonard; who also holds my general power

of attorney; to the mentioned parcels of real estate." The certificates of sale, however, ran to George White. On August 11, 1941, Mr. Leonard, as attorney in fact for George White, assigned the foreclosure certificates of sale of two of the properties to one Don Jose for a purported consideration of $3,000. ($300 and a note for $2,700.) The following day the other piece of foreclosed property was assigned to Marie Reighley. These assignments were not delivered to the named assignees, and were not recorded by Mr. Leonard, but were later recorded by Charles A. Sunderlin in September and October, 1942.

George N. White, according to appellants' brief, "died without heirs," and on November 19, 1941, Ben H. Brown, Public Administrator, was appointed to administer the estate. Thereafter the public administrator corresponded with Attorney Leonard concerning the foreclosure actions handled by the latter for Mr. White. In a letter of March 12, 1942, Mr. Leonard referred the public administrator to the above-mentioned power of attorney executed by White to Leonard, "waiving any accounting therefore whatsoever," and took the position that "the administrator cannot demand anything that the person (White) could not himself demand." Apparently satisfied on this score, on April 20, 1943, the White estate was closed by the public administrator's office as insolvent, and the administrator discharged.

Upon the death of Jack P. Leonard, March 23, 1942, Mrs. Leonard went to the office of Charles A. Sunderlin, attorney at law and appellant herein, and gave such attorney the keys to Mr. Leonard's office. Thereafter Sunderlin, in the words of respondents' brief which is supported by the record, "moved all of the files to his own office (Stat. p. 330, line 11) and had the telephone calls transferred to his office (Stat. p. 294, lines 15-17)." On August 7, 1942, Mr. Sunderlin called upon the Don Jose named as assignee of the foreclosure certificates of sale hereinbefore mentioned, and, according to Mr. Jose's testimony, stated that if the latter "would assign these papers to him (Sunderlin) through his connection with the Merchants Credit Association that he would be able to realize some money and give it over to the Leonards . . . I think the high point was that the taxes were due, and that they were likely to be dispossessed." Mr. Jose further testified, "I told him (Sunderlin) that the certificates of sale were assigned to me which I did for Jack Leonard and that I had no actual

interest in them.'' Grant deeds covering two of the White properties were then executed by Don Jose to Sunderlin's *alter ego,* the Merchants Credit Association. A similar deed was secured by Attorney Sunderlin from Marie Reighley covering the other White property foreclosed by Jack Leonard.

After obtaining the deeds from Don Jose and Marie Reighley, the Merchants Credit Association placed loans on part of these properties, and according to appellants' brief, ''sold the properties conveyed to it by the defendant Don Jose, and holds the legal title to a portion of lot 36 of Grant tract, Harold Way, Los Angeles, which was conveyed to it by the defendant Marie Reighley.'' Thereafter, in October, 1942, Attorney Sunderlin started probate proceedings for Mrs. Leonard in the estate of Jack Leonard, deceased, not listing these properties, and had the remaining small estate distributed to the widow. Mrs. Leonard testified that Sunderlin did not disclose the above-mentioned deeds nor the sales made of such properties, but that knowledge thereof was acquired by Mrs. Leonard from the tax assessor's office, and in April, 1945, certain disciplinary proceedings before The State Bar arising out of this transaction. There was further testimony by Mrs. Leonard that Sunderlin at first denied having sold these properties, and finally said: ''Well, yes, I did, but I didn't get anything out of it.''

On September 11, 1945, more than three years after the death of Jack P. Leonard, Charles A. Sunderlin and the Merchants Credit Association filed the present action, denominated a ''Complaint for Declaratory Relief.'' This complaint alleges that the deeds from Don Jose and Marie Reighley were given to the Merchants Credit Association ''as assignee for benefit of creditors,'' for attorney fees due or to become due to Charles A. Sunderlin, fees to the Merchants Credit Association, taxes, interest, etc., and ''as assignee for the benefit of Charles A. Sunderlin and any other legal claimants to the proceeds that might be derived from the sale of the said properties.'' Plaintiffs also aver that from the sale of the properties conveyed by Don Jose the Merchants Credit Association derived the sum of $4,900; that expenditures amounted to $1,999.34, leaving net proceeds of $2,900. In respect to the property deeded by Marie Reighley, it is alleged that the Merchants Credit Association holds title to said real property as assignee to secure payment of various fees alleged to be due such association and Charles A. Sunderlin. The

court was asked to define and determine "the rights and interests of the respective parties plaintiffs and defendants."

Margaret N. Leonard filed a cross-complaint for declaratory relief, alleging that Sunderlin had failed to account for certain fees collected from unfinished law business left by Jack P. Leonard; that Sunderlin had induced Don Jose and Marie Reighley to convey the properties and that appellants "at all times intended to appropriate to themselves the said parcels." Answers were filed by the public administrator and other defendants; that of Don Jose praying for cancellation of the $2,700 note given to Jack Leonard. Marie Reighley disclaimed any interest in the real property.

The trial court rendered judgment against the appellants Merchants Credit Association and Charles A. Sunderlin, and found that appellants "acted in bad faith in the handling of the three George White parcels and with the intent and purpose of disguising the facts with reference thereto from the heirs of the Leonard estate and with intent to defraud such heirs." The court further found "that due to the method of handling of the property by the plaintiffs, the plaintiffs are not entitled to any compensation . . . whatsoever," and that such handling and plaintiffs' conduct "constitute a disservice to the estate of Jack P. Leonard and the heirs thereof, rather than any service thereto." Judgment was rendered in favor of Mrs. Leonard for $3,951.32 with interest, and appellants were ordered to convey the remaining parcel of real property to Margaret N. Leonard as administratrix. The Don Jose note was ordered cancelled.

According to the appellants' brief, one of the important questions involved on this appeal is whether the Merchants Credit Association, "trustee of the express trust, involved in this action (is) entitled to compensation for its services in the management of the trust estate, and remuneration for its legal expenses, and for the legal services rendered for the trust estate, by the plaintiff Charles A. Sunderlin, and for bringing of the declaratory relief action?" Appellants' entire brief is, in effect, based upon the theory of an "express trust." However, as pointed out by respondents, "Plaintiffs are not express trustees but involuntary or constructive trustees and as such are barred by Section 2275 of the Civil Code from receiving compensation for alleged services." Section 2275 provides that "An involuntary trustee, who becomes such through his own fault, has

none of the rights mentioned in this article." Aside from appellants' repeated assertions, the record is barren of anything which would indicate the creation of an express trust.

According to section 2221 of the Civil Code, "a voluntary trust is created, as to the trustor and beneficiary, by any words or acts of the trustor, indicating with reasonable certainty: 1. An intention on the part of the trustor to create a trust; and, 2. The subject, purpose, and beneficiary of the trust." In the instant case, however, there is evidence that Attorney Sunderlin, although ostensibly acting as attorney for Mrs. Leonard, went to Don Jose and Marie Reighley and secured ordinary grant deeds of the three White properties to the Merchants Credit Association. These deeds were not in the form of trust indentures but absolute conveyances. Sunderlin then, without communicating the facts to Mrs. Leonard, proceeded to secure loans on these properties, and to dispose of two parcels without securing court approval or sanction of the parties interested. While it is true that much of this evidence is contradicted by Mr. Sunderlin, the record discloses substantial evidence to support the trial court's finding that Sunderlin "acted in bad faith" and "with intent to defraud such heirs." Obviously an express trust does not create itself, nor can a so-called trustee create such a trust for the benefit of such trustee.

The appellant contends that "The estate of Jack P. Leonard, Deceased, has no right, title or interest in the real properties or proceeds of sale." In this connection it is argued that Leonard, "acting in a fiduciary capacity, as attorney and attorney in fact for the late George N. White, could not by undue influence, gift, power-of-attorney, conveyance, subterfuge, circumlocution or otherwise acquire for himself or his family the real properties of his client . . . without an adequate consideration." Appellants' brief then inquires whether it is fraudulent for Sunderlin "to refuse to consummate the fraud of a deceased attorney-in-fact, whose estate he represents, the estate of Jack P. Leonard, deceased, to wrongfully acquire the properties of his principal, the late George N. White, by bogus and fictititious conveyances; and to bring an action in declaratory relief to adjudicate the question of equitable ownership?"

Appellants' attempt to shift the blame to the decedent, Jack P. Leonard, is without support in the record. In the letter of January 21, 1942, written by Leonard to the public

administrator, occurs the following passage which was omitted in the version contained in appellants' brief:—"Prior to my own marriage about fourteen years ago, we chumed together a great deal for some years. He (George White) was unmarried and allways told me that he had no living relatives. . . . He also stated at the time and a number of times in the past that he had no one else to remember as he had no relatives, and that upon his passing I was to settle up his business, pay all costs and expenses of the foreclosures together with some other confidential matter, and to retain for myself whatever was remaining." The irrevocable power-of-attorney which White then executed to Leonard, providing that no accounting was to be required of Leonard, appears to have been consistent with the facts as stated in the above letter.

Notwithstanding appellants' insistence that the property belonged to George White, the record indicates no particular desire to restore the property to the George White estate. When the trial judge inquired why, if it belonged to White, the property wasn't "assigned back to George White," Sunderlin's answer was: "Because it is involved in controversy here where assignments were made to Don Jose and Marie Reighley." It was Sunderlin who had caused these assignments to be recorded and who then had secured the grant deeds from the assignees to the Merchants' Credit Association. It has already been noted that the trust theory and the filing of the action for declaratory relief based upon the theory of an assignment for the benefit of creditors did not materialize for three years. To the trial court's inquiry, "Why did you wait three years," Attorney Sunderlin's reply was: "It wasn't my responsibility. It was the responsibility of Ben Brown (Public Administrator) to take care of the County's business, to care of the George White." However, as hereinbefore indicated, the record contains substantial evidence that the property in question was properly an asset of the estate of Jack P. Leonard, deceased, and that George White had so intended.

What has already been said will likewise dispose of appellants' argument that Margaret N. Leonard, as administratrix, "does not come into this equity court with clean hands. Her claims of title and interest are based upon the unfaithful conduct of the late Jack P. Leonard." As respondents' brief points out, "There is no indication in the record that Mr. Jack P. Leonard, if he had lived, would have gone into court with any unclean hands" in respect to the

property in question, and none can be imputed to Mrs. Leonard. Indeed, the allegation of unclean hands comes with little grace from the appellants in view of the evidence supporting the trial court's finding that appellants "acted in bad faith . . . with the intent and purpose of disguising the facts . . . and with intent to defraud."

There is likewise no merit in appellants' insistence that irregularities, abuse of discretion, etc., prevented plaintiffs from having a fair trial. The trial court is charged with making "false and fraudulent findings"; respondents' attorneys are accused of having "perverted and obstructed justice"; the public administrator was influenced by "legal chicanery." According to appellants' brief, "Justice had forsaken the courtroom long before the day of judgment." Of all this the record presents no evidence. Nor is reversible error made to appear in any of appellants' contentions.

The judgment is affirmed and the attempted appeal from the order denying a motion for a new trial is dismissed.

White, J., concurred.

York, P. J., did not participate.

A petition for a rehearing was denied February 4, 1948, and appellants' petition for a hearing by the Supreme Court was denied March 18, 1948.