[L. A. No. 20778. In Bank. Apr. 28, 1949.]

CHARLES A. SUNDERLIN, Petitioner, v. THE STATE BAR, Respondent.

Charles A. Sunderlin, in pro. per., for Petitioner.

Jerold E. Weil for Respondent.

THE COURT.—Petitioner has brought before this court for review the proceeding in which the Board of Governors of The State Bar recommended that he be suspended from the practice of the law for a period of two years.

The notice to show cause, issued on August 29, 1945, charges petitioner with the violation of his oath and duties as an attorney, the commission of acts involving moral turpitude and dishonesty (Bus. & Prof. Code, §§ 6067, 6068, 6103, 6106), and the violation of rule 9 of the Rules of Professional Conduct of The State Bar. It is charged that petitioner,

while acting as attorney for the estate of Jack P. Leonard, deceased, and for his widow, Margaret N. Leonard, administratrix of said estate, caused certain real properties to be conveyed to the Merchants Credit Association of the United States, a corporation formed and owned by him and members of his immediate family; that no consideration was paid for the conveyances and that they were effected without the knowledge and consent of Mrs. Leonard; that as a result thereof, title to the properties was acquired for and on behalf of petitioner and members of his immediate family; that subsequently, petitioner caused the properties to be sold without Mrs. Leonard's knowledge and consent and that neither he nor the association accounted to her for the proceeds of the sale.

The matter proceeded to a hearing before a local administrative committee of The State Bar, which made findings of fact and conclusions of law therefrom favorable to petitioner and recommended that the disciplinary proceeding be dismissed. Upon transfer of the proceeding to the Board of Governors, the notice to show cause was amended "to conform to proof." As amended, it alleges that Mrs. Leonard owned a beneficial interest in the properties conveyed to the association subject to the administration of Leonard's estate and charges that petitioner had knowledge of this fact at the time he caused the conveyances to be made. The Board of Governors concluded that petitioner was guilty of unprofessional conduct as charged and recommended that he be suspended from practice for a period of two years.

Jack P. Leonard, an attorney at law, died on March 23, 1942. On that date, his widow, Margaret N. Leonard, employed petitioner to act as her personal attorney to complete the unfinished legal business left by Leonard and to probate his estate. She gave petitioner the keys to Leonard's office, and with her consent, petitioner thereafter moved all of Leonard's files to his own office. Upon examination of these files, petitioner discovered the following facts.

██ Leonard, as attorney for George N. White, had instituted actions to foreclose three deeds of trust held by the latter. On June 10, 1941, White executed and delivered to Leonard a general power of attorney "for his use and benefit or benefit of said attorney hereby waiving any accounting therefore whatsoever, and irrevocable; by my demise or otherwise." Judgments were obtained in the foreclosure actions, and a court commissioner was appointed to sell the properties.

The court awarded Leonard attorney fees in the amount of $500 for services rendered by him in connection with those actions. On July 15, 1941, White wrote to the court commissioner as follows: ''In order to secure costs of sale, together with attorneys fees and other moneys expended, in the foreclosures actions . . . you are hereby authorized and instructed to make sales, and give necessary titles, to my attorney Jack P. Leonard; who also holds my general power of attorney; to the mentioned parcels of Real Estate.'' At the commissioner's sale, held on August 5, 1941, the properties were purchased and the certificates of sale were issued in White's name.

On August 11, 1941, Leonard, as the attorney in fact of White, executed an assignment of the certificates of sale of two of the properties to Don Jose for a recited cash consideration of $300 and a promissory note, made payable to Leonard, in the amount of $2,700. On the following day, Leonard executed an assignment of the certificate of sale of the other property to Mrs. Marie Reighley. These assignments were not recorded by Leonard, and from all that appeared from his files, they were not delivered to the named assignees.

Upon White's death on October 16, 1941, Ben H. Brown, Public Administrator of Los Angeles County, was appointed to administer his estate. In a letter dated January 12, 1942, Brown made request upon Leonard for information concerning the foreclosure actions. In his reply, dated January 21, 1942, Leonard stated that the assignment of the certificates of sale to Jose ''was made by Mr. White, although he had me attend to all details under the attached power-of-attorney and authorized the accrueing payments to be made to me. . . .'' He also stated that he had known White for about 25 years and that White ''wished to give me complete authority by power of attorney to attend to and dispose of whatever he had or would leave if he passed away . . . that upon his passing I was to settle up all his business, pay all costs and expenses of the foreclosures together with some other confidential matters, and to retain for myself whatever was remaining; and on that latter date [White] executed the attached power of attorney, which he desired for his own reasons; be *irrevokabe* and without any accounting. . . .'' Brown's reply of March 2, 1942, was as follows: ''After full consideration of your report of your business dealings with the deceased we are obliged to advise that the report is not acceptable as a final disposition of the matter. Demand is therefore made upon you for delivery to Ben H. Brown, as administrator of

this estate of the proceeds of sale by you of the commissioner's certificates on the two foreclosures . . . to one Don Jose, being $300.00 in cash and promissory note for $2700.00. You can then file your claim against the estate covering your legal services to the deceased on the two foreclosures. Unless we hear from you within ten days from receipt of this demand we will be obliged to take such action as we deem necessary." The final correspondence between Brown and Leonard was Leonard's letter of March 12, 1942, 11 days before his death, stating: "If you will refer to the certified copy of Power of Attorney, which I left with your office, you will note that the power is made '*for the benefit of said attorney, hereby waiving any accounting therefore whatsoever, and irrevokable in the event of my demise or otherwise.*' Which, as I further explained, was for a definite reason of the deceased White and which he had a right to do. In view of the fact that any accounting whatsoever is expressly waived, I cannot perceive how I could be obliged to do so. I agree that the demise would revoke the power in so far as any further act of agency might be concerned, but this is not the case here. Nothing is left undone thereunder. . . . In other words the Administrator cannot demand anything that the person could not himself demand; by reason of the fact that the power was both for the benefit of the Attorney; and all accounting waived." On August 6, 1942, the court commissioner in the foreclosure actions executed and delivered deeds to the properties to Jose and Mrs. Reighley.

Apprised of the foregoing facts, petitioner called upon Jose on August 7, 1942, and, according to Jose's testimony which is uncontradicted, stated that "he was trying to get some money for Mrs. Leonard, that she was badly in need of help, and that he had all the papers ready there, and asked me if I would assign some property over, and I said certainly, because he was going to dispose of the property and get the money for Mrs. Leonard. So I signed the papers——." He also testified that he told petitioner "exactly what [his] agreement with Jack Leonard was" in connection with the assignment to him of the certificates of sale; that he never paid Leonard the recited cash consideration of $300; that he signed the promissory note at Leonard's request only as an "accommodation"; that he "wasn't to get any interest in the property"; and, that he agreed to reassign the certificates to Leonard upon the latter's request. Grant deeds to two of the properties were thereupon executed and delivered by

Jose to the Merchants Credit Association of the United States, a California corporation licensed to conduct a collection agency, of which petitioner's wife is the president and petitioner is the secretary-treasurer. On August 10, 1942, petitioner got in touch with Mrs. Reighley and asked her to release the property standing in her name "so that he could clear the [Leonard] estate." This information was the first that Mrs. Reighley had of Leonard's assignment to her of the certificate of sale of the property. She executed and delivered a grant deed to the property to the association. Neither petitioner nor the association paid any consideration to Jose or Mrs. Reighley for these conveyances.

On September 4, 1942, the association executed a deed of trust to one of the properties to the Bank of America as security for a loan of $1,500. Petitioner testified that "We got about $300.00 out of that [loan]"; that "there was $500.00 they owed until the property met their qualifications for a loan. It never was paid. . . . The total expenses amounted to about $700.00 and there was about $300.00 available"; that this amount was deposited to the credit of the account of the association. On September 17, 1942, the assignments of the certificates of sale of the properties to Jose and Mrs. Reighley were recorded at petitioner's request. In accordance with the escrow instructions in connection with the foregoing loan, these assignments were re-recorded on October 9, 1942, along with the commissioner's deeds to the properties and the grant deeds thereto from Jose and Mrs Reighley to the association. There is no evidence that Mrs. Leonard had knowledge of or consented to the foregoing transactions.

In October, 1942, petitioner commenced probate proceedings in Leonard's estate. The inventory of Leonard's assets filed therein did not list any of the properties heretofore mentioned. Upon application of Mrs. Leonard, prepared by petitioner, the court entered its decree that the entire estate, which did not exceed $2,500 in value be set aside to her.

In December, 1942, the association obtained a loan of $2,250 from J. G. Giebler and executed a deed of trust on a part of these properties as security therefor. Petitioner testified that part of the funds obtained therefrom was used to retire the loan obtained from the Bank of America, and that the balance thereof was deposited to the credit of the association's account. This loan was also obtained without the knowledge or consent of Mrs. Leonard, and, as in the case of the loan obtained from the Bank of America, neither petitioner

nor the association accounted to her or anyone else for the proceeds obtained therefrom.

On April 20, 1943, the White estate was closed as insolvent, and Brown, the public administrator, was discharged. There is no evidence of any communications between petitioner and Brown relative to these properties. Petitioner did not file a claim with the White estate for the attorney fees awarded to Leonard in the foreclosure actions.

In November and December, 1943, petitioner caused the association to sell the properties conveyed to it by Jose for approximately $4,100. Neither he nor the association accounted to Mrs. Leonard or anyone else for the proceeds received therefrom. Mrs. Leonard testified that she had no knowledge of the sale and that she did not consent thereto; that in the first week of April, 1945, "when [she] went to see about paying [her] taxes [she] inquired about this property and they told [her] that it had been sold by the Merchants Credit Association and that was the first time that [she] knew that the property stood in the [name of the] Merchants Credit Association"; that she "went up to Mr. Sunderlin's office" and "asked him about the property and he said 'I haven't done anything with that property because it is so run down that I haven't been able to do a thing with it,' and [she] said 'I beg your pardon, I happen to know that you sold it, the Winslow Street property,' and he said 'Yes, I have but I didn't get a penny out of it.'" She also testified that petitioner offered to give her a check for $250, but that she refused to accept it. This amount, petitioner testified, represented the "attorney's fees tied up in that Reighley lot in Hollywood."

Immediately following the foregoing conversation, Mrs. Leonard filed a complaint against petitioner with The State Bar. After preliminary investigation by a local committee, the notice to show cause herein was issued and was served upon petitioner on September 4, 1945. On September 11, 1945, petitioner filed in the Superior Court for Los Angeles County, an action for declaratory relief joining as defendants, Brown, the public administrator, Jose, Mrs. Reighley, Mrs. Leonard, et al. The theory of the action was that the association held the properties conveyed to it by Jose and Mrs Reighley, or the proceeds from the sale thereof, as trustee of an express trust for the benefit of creditors of and possible heirs to the White estate, as assignee to secure payment of various fees alleged to be due the association and petitioner for services rendered in connection with these properties, and as assignee

for "any other legal claimants." The court was asked to define and determine "the rights and interests of the respective parties" in these properties. Mrs. Leonard filed a cross-complaint therein for declaratory relief, alleging that petitioner failed to account for certain fees collected from Leonard's legal business; that he induced Jose and Mrs. Reighley to convey the properties to the association, and that he and the association "at all times intended to appropriate to themselves the said parcels." Petitioner's testimony explaining his reason for commencing that action is as follows: "As soon as I had notice from anybody claiming an interest in this property what did I do. I filed this proceeding for declaratory relief. I wasn't charged with any notice until Mrs. Leonard made a demand at that time. I considered that my legal services were probably worth more than all the money involved aside from the property. There was the Hollywood property [that had been conveyed to the Association by Mrs. Reighley] worth probably $7,000.00; there was the demand of Ben H. Brown for $3,000.00 [in his letter to Leonard dated March 2, 1942], and upon the filing of the suit for declaratory relief I deposited with the Superior Court a check for $3,000.00 to cover the demand of Ben H. Brown representing what they contended was the interest of the White estate in this property." Petitioner has introduced into evidence the minute order of the court in that action, dated June 5, 1946, which reads in part as follows: "The Court adjudges and decrees as follows: The defendant Estate of Jack P. Leonard by Margaret N. Leonard, Administratrix, is entitled under this declaratory relief judgment to have conveyed to it the real property described as Lot 36 [the Reighley lot], and delivered to it cash moneys in the sum of $3,883.42. Defendant Don Jose is entitled to have and the clerk is ordered to deliver to Don Jose for cancellation the $2700.00 note received in evidence as Exhibit 11, for cancellation. Plaintiffs are not entitled to any compensation in these proceedings for any services whatsoever. This court leaves to the probate proceedings of the Estate of Jack P. Leonard, deceased, the question of the disposition of any claim so far as the Estate of George P. White is concerned. . . ."

On the basis of the foregoing evidence, the Board of Governors, on June 25, 1948, made the following findings: That by causing the properties to be conveyed to the association, petitioner in effect acquired title thereto for and on behalf of himself and members of his immediate family without the

payment of any consideration therefor; that by reason of the conveyances, the association was vested with legal title to the properties as trustee for Leonard's estate and for Mrs. Leonard; that the loans secured on the properties and the sale of a part thereof were effected without authorization of court and without Mrs. Leonard's knowledge and consent; that prior to September 11, 1945, on which date petitioner filed an action for declaratory relief, neither he nor the association made any effort to have the rights in or ownership of the properties or the proceeds therefrom determined; and that neither he nor the association accounted to Mrs. Leonard or anyone else for the proceeds of said loans or of said sales. The board concluded, "That the action of the [petitioner] in causing said property to be conveyed to Merchants' Credit Association of the United States was done in bad faith and for the purpose of defrauding Margaret N. Leonard," whereupon, by vote of 10 members, with one member not voting, it recommended that he be suspended from practice.

Petitioner contends that the findings of fact made by the board are unsupported by the evidence. From a complete review of the record, however, the conclusion is inescapable that these findings are supported by the evidence, and that the record as a whole justifies fully the recommendation that has been made in this proceeding.

Numerous discrepancies and weaknesses are apparent throughout petitioner's arguments and testimony in which he attempts to vindicate his conduct in connection with the White properties.

Petitioner first contends that upon his employment by Mrs. Leonard as her attorney, she transferred all of Leonard's legal business to him as compensation for his services. This contention is not supported by the evidence, and petitioner, in his own testimony, contradicts it. Mrs. Leonard testified that it was "taken for granted" that petitioner should handle the pending cases left by Leonard and that she knew that her husband was working "to clear up" these "three pieces of property." She denied, however, that she "turned over" Leonard's business to petitioner to keep as his own; rather, she testified, "We agreed that when the property was sold he was to get more than a reasonable share for the work he did for me . . ." and that he was then to return the balance of the proceeds to her. Petitioner's own testimony in this regard was as follows:

"Q. . . . Did Mrs. Leonard at that time agree to sell, assign, deliver or cause to be sold or assigned to you these properties as compensation for your services?

"A. [By petitioner.] Certainly she did. I wouldn't go that far but I wouldn't do anything with those properties without her consent. I asked her if she would have Jose assign these properties over to me as her lawyer.

"Q. Did you ask her to do that? A. I wanted security of some kind for my legal services. At the same time it was a legal mess.

"Q. Then she said that she would have Mr. Jose assign those properties to you as compensation for your legal services? A. No, no."

Petitioner next contends that neither Mrs. Leonard nor the Leonard estate had any interest in the White properties and that therefore he was under no duty to account to them for the funds received by the association from loans on the properties and from the sale of a part thereof. Petitioner relies principally upon the argument that Leonard, as attorney in fact of White, defrauded the latter by making dummy assignments of the properties; that the power of attorney given Leonard by White, did not authorize him to deal with the properties as his own. It should be noted, however, that petitioner relies upon this very instrument for authorization of the mortgage and sale of the properties by the association. He asserts that the association "mortgaged and sold such property as was necessary 'in order to secure costs of sale, together with attorney fees and other moneys expended, in the foreclosure actions,' as White had directed. . . ." He thus attempts to justify his conduct on the basis of authorization thereof by White, while at the same time asserting that this very authorization gave Leonard no interest whatever in the properties and no right to sell them. Petitioner's other arguments and his testimony also belie this contention. In response to a question whether he believed "that either Mrs. Leonard or the Leonard estate would have a valid interest [in the properties] at least to the extent of those attorney's fees and those judgments [in the foreclosure actions]" petitioner testified, "I felt there was a contingent interest there." In August, 1942, when petitioner approached Jose and Mrs. Reighley and persuaded them to convey the properties, by grant deeds, to his *alter ego*, the Merchants Credit Association, he stated that the conveyances were necessary in order that

he could "clear the [Leonard] estate" and in order to obtain "some money for Mrs. Leonard." Moreover, in attempting to justify his failure to file a claim with the White estate for the services rendered by Leonard in connection with the foreclosure actions, petitioner asserts that that was the "obvious course for [him] to pursue to protect the interests of Margaret Leonard or the Leonard estate." Furthermore, this contention is inconsistent with his conduct in obtaining loans on the properties and in selling a part thereof, for there is no evidence that anyone consented to these transactions or that he obtained authorization of court therefor. His authority to sell or encumber these properties could arise only from his position as the representative of the Leonard estate. Unless the properties were assets of that estate, he had no authority to sell them or obtain loans thereon. It is thus apparent, that contrary to petitioner's contention, he at all times believed that Mrs. Leonard or the Leonard estate had at least a contingent interest in these properties.

Petitioner next contends that the Merchants Credit Association held the properties as assignee for the benefit of creditors or as trustee of an express trust for the benefit of all possible claimants to the properties; that "because it was the family corporation of petitioner." it "was in a peculiarly fortunate position" to "protect the interests of the Leonards, or anybody else, even the White estate, if the court should so decree." There is no evidence that the association was ever constituted trustee of an express trust of these properties. Moreover, its conduct in relation thereto contradicts this contention. Petitioner's own testimony reveals that the purpose underlying the conveyances of the properties to the association was to obtain security for the legal services rendered by him; that the association held title to the property and dealt with it as its own intending only to act for the interest of possible claimants thereto if, and only if, a demand were made upon it. The deeds obtained from Jose and Mrs. Reighley were not in the form of trust indentures, but were absolute conveyances. The properties were sold and loans obtained thereon without court approval and without the sanction of possible claimants thereto. No accounting was made of the funds realized from these transactions. The funds were deposited in the association's bank account and were mingled with other moneys of the association. Although one of the ledger sheets of the bank account bears the notation, "trustee account," petitioner testified that he "didn't think" that the account

was ever designated with the bank as a trustee account. He also stated that "The balance necessarily kept [therein] did not reflect the amount of funds which the [association] might be holding for anyone as trustee," but that "We all had resources for more than this amount"; that part of the funds was invested in securities "as required by the laws of the State of California." He admitted that the securities to which he referred were purchased and issued in his own name and endorsed by him in blank to the association.

It is clear from the record that the association in its assumed role as trustee did not "protect the interests of the Leonards or anybody else, [including] the White estate." As heretofore pointed out, petitioner believed that Mrs. Leonard had an interest in the properties, at least to the extent of the attorney fees awarded her husband in the foreclosure actions. Petitioner made no attempt to file a claim with the White estate, as was suggested in Brown's letter to Leonard, dated March 2, 1942. He attempts to justify his conduct in this regard with the explanation that had he filed a claim with the White estate, Brown would have commenced legal action to obtain the properties to the prejudice of the interests of his client, Mrs. Leonard. The fact remains, however, that he made no effort whatever to protect Mrs. Leonard's interests. Although he had knowledge as early as August, 1942, that Leonard had an interest in these properties, at least to the extent of his attorney fees, petitioner did not list the properties in the inventory of Leonard's assets, which he prepared and filed with the probate court in October, 1942. Instead, he permitted the Leonard estate to be closed and took no action to ascertain Mrs. Leonard's interests in the properties until September, 1945, when he commenced the action for declaratory relief. His testimony in this regard is likewise unconvincing.

"Q. Did you believe that Mrs. Leonard had any interest in this property? A. To the extent of those attorney's fees.

"Q. Why didn't you list that as a part of the estate of Jack Leonard? A. That was intangible and controversial."

Petitioner also contends that since early in August, 1942, he believed that the White estate was the true owner of the property. He did not, however, communicate this information to Brown even though he asserts that the association was protecting the interests of the White estate. Petitioner thus relies upon his client's interest in the properties, which he says he believed untenable, to justify his conduct

as the asserted trustee of the properties in failing to have them paid over (or at least to have the title thereto promptly determined by judicial action) to the party who he believed was the legal owner thereof. The White estate was closed as insolvent on April 20, 1943, without further demand on the properties being made in its behalf; yet petitioner relies on the contingent claim of that estate to justify his conduct for two years thereafter in dealing with the properties as his own and to justify his failure to account to Mrs. Leonard for the proceeds therefrom and his failure to inform her of the conveyances, sales, and loans. Petitioner's explanations of his conduct are so inconsistent with his contention that the association acted as a disinterested party in this matter that it is doubtful whether the contention is made in good faith.

Throughout his testimony and in his briefs, petitioner refers repeatedly to the action for declaratory relief filed by him as evidencing his good faith in this matter and as proof that he accounted to Mrs. Leonard for the properties and the funds obtained therefrom. The complaint, cross-complaint and minute order of the court in that action were introduced into evidence by petitioner. Petitioner asserts that the action "was filed, in a reasonable length of time from the giving of notice or the making of a demand" by Mrs. Leonard; "That the issues [involved therein] were controversial, to wit: First: The question as to the amount of attorney fees that was payable. Second: The amount of fees due Merchants Credit Association of U. S., a Corporation, for acting as trustee. Third: The question as to who were the legal owners, all of which were controversial, and required a judicial rather than an administrative adjudication." He also contended before the local committee that that action was "a part of [these] proceedings. Everything involved in that case is involved in this case."

Petitioner's contention that he commenced the foregoing action within a "reasonable length of time" is untenable, particularly when viewed in the light of his position as attorney for Mrs. Leonard and his self-assumed role as trustee of the properties for all possible claimants. The association obtained the properties in August, 1942, but the action for declaratory relief was not filed until September 11, 1945, a week after the notice to show cause herein was served upon petitioner. On appeal from the trial court's judgment in that action in favor of the Leonard estate, the District Court of Appeal held (*Merchants Credit Assn.* v. *Brown,* January 19,

1948, 83 Cal.App.2d 296, 300-301 [188 P.2d 558]) that there was "substantial evidence to support the trial court's finding" that petitioner "acted in bad faith in the handling of the three George White parcels and with the intent and purpose of disguising the facts with reference thereto from the heirs of the Leonard estate and with intent to defraud such heirs." The court also held that the association was not a trustee of an express trust of the properties, but that it was a constructive trustee thereof; that therefore, it was barred by section 2275 of the Civil Code from receiving compensation for services rendered in connection with these properties. Petition for hearing in the foregoing case was denied by this court on March 18, 1948.

All of the charges against petitioner are supported by the evidence. It is therefore ordered that petitioner be suspended from the practice of the law in this state for a period of two years, effective 30 days after the filing of this order.

Petitioner's application for a rehearing was denied May 26, 1949.