[Civil No. 3194.   Filed November 16, 1932.]

[15 Pac. (2d) 956.]

JAMES B. BUTTON, Superintendent of Banks of Arizona and *Ex-officio* Receiver of the CITIZENS STATE BANK, a Banking Corporation, Appellant, v. E. S. WAKELIN, Appellee.

Mr. R. G. Langmade, for Appellant.

Mr. L. M. Laney, for Appellee.

ROSS, J.—This suit is over the assets of the Citizens State Bank, an insolvent, and is between the state superintendent of banks, *ex-officio* receiver, and E. S. Wakelin, mortgagee.

The bank was taken over by the superintendent for liquidation on July 31, 1930, and among its assets were a number of past-due notes and acceptances of the Farmers Ginning Company, hereafter referred to as ginning company. Thereafter the superintendent instituted several collection suits against the ginning company, which, in due course, were reduced to judgments under which executions were issued and levied upon the ginning company's property, consisting of realty and personalty, and at a sale thereunder the superintendent of banks, as the receiver of the bank, became the purchaser of such property. Thereafter, on June 16, 1931, the appellee, E. S. Wakelin, brought suit against the ginning company to foreclose a mortgage on the same property as that which had been sold under execution and bought by the receiver, and made the latter a defendant, and prayed that he be restrained from removing any of said

property pending the determination of its ownership. The court issued a temporary restraining order as prayed for, which, after a hearing, was continued. From the order of the court refusing to dissolve such restraining order, the superintendent has appealed to this court.

Thereafter a trial of the issues on their merits was had before the court, which resulted in a judgment in favor of appellee, Wakelin. It is the appeal from this latter judgment that we now proceed to consider.

The appeal in the other case is numbered 3155, and will be disposed of in a separate opinion, *infra,* p. 94, 15 Pac. (2d) 960.

The property involved consists of a ginning plant and its equipment and about twelve acres of land upon which it is located. The plaintiff, according to his complaint, loaned the ginning company on March 21, 1921, $25,000 at eight per cent. interest, and at the same time took as security therefor a mortgage on the ginning plant, etc. He alleges that, shortly before the note and mortgage became due, for a good and valuable consideration from the maker ginning company, he extended the date for payment to the 21st day of March, 1925, or three years from its due date, and made and signed a notation on the note in words and figures as follows: "Extended to Mch 21, 1925. E. S. Wakelin"—and that thereafter, on June 2, 1930, the maker acknowledged in writing the justness of the note and mortgage and promised to pay same according to tenor.

The receiver bank superintendent, in his answers to the complaint and restraining order, raised the following issues: (1) He alleges that plaintiff's remedy, when he filed his action on June 16, 1931, was barred by the six-year statute of limitation; and (2) that plaintiff, Wakelin, while he was president of the Citizens State Bank and a member of its loan committee, loaned and advanced to the mortgagor ginning

company the sum of $18,714.39, itemized as follows: On December 29, 1928, $5,000; September 13, 1929, $2,000; January 3, 1930, $8,500; March 10, 1930, $1,525; and July 30, 1930, $1,689.39 overdraft—that after he took possession of the bank he realized as a credit thereon only $3,308.15, the balance being reduced to judgments against the ginning company; that plaintiff, Wakelin, on June 2, 1930, the date of the purported acknowledgment of the justness of the note and mortgage, was the president and a director of the bank and knew it was hopelessly insolvent; and that said acknowledgment, if made as alleged, created an unlawful preference in favor of the bank's president, to the prejudice of the rights of creditors, depositors and stockholders of the bank.

We first notice the contentions concerning the bar of the statutes of limitations. The section relied upon is 2062, Revised Code of 1928, the pertinent part of which reads:

"Actions for debt where the indebtedness is evidenced by or founded upon a contract in writing, executed within this state, shall be commenced and prosecuted within six years after the cause of action has accrued and not afterward."

It is of course not arguable that a note due March 21, 1922, would not be outlawed on March 22, 1928, under the above statute, unless the holder and the maker thereof have taken proper and legal steps to prevent the running of the statute. Recognizing this, the plaintiff in his complaint anticipated the defense of limitation to his action and alleged that certain things had been done which he contends prevented the running of the statute. In confirmation of these allegations, the court found as a fact that the plaintiff entered into an oral agreement with the ginning company shortly before the due date of note extending the time for its payment until March 21, 1925, and that such agreement was based upon a valuable con-

sideration. It was also found that the ginning company, on June 2, 1930, acknowledged to plaintiff in writing the justness of such note and mortgage and promised to pay the same. These findings support the complaint, and we accept them as true. The oral extension was legal and binding upon the parties. 8 C. J. 429, § 631; 41 C. J. 808, § 952. No cause of action therefor accrued until the debt became due on March 21, 1925, and the statute of limitation, by its express terms, begins to run only upon the accrual of the cause of action. With this conclusion defendant does not dissent, but he asserts that, since the extension was made by an oral agreement, the debt and its security thereafter were not "founded upon a contract in writing," and hence the three-year limitation of section 2060, and not the six-year limitation of section 2062, applies. If he is right in this contention, the answer is that the three-year statute was not pleaded. 37 C. J. 1222, sec. 729; *Wooster* v. *Scorse,* 16 Ariz. 11, 140 Pac. 819; *Pima Farms Co.* v. *Elliott,* 32 Ariz. 343, 258 Pac. 304. The acknowledgment of the justness of the debt on June 2, 1930, even if the three-year statute applies, took the debt out of its operation, because such acknowledgment was made in accordance with the terms of section 2068.

Defendant claims that the mortgage lien was lost because the mortgage was not "extended" and recorded as prescribed by section 2308. The courts have generally held that the word "extended" as used in section 2308, *supra,* has no relation to the extension of time of payment, but to the inclusion of other or additional property in the mortgage. *Consolidated Nat. Bank* v. *Van Slyke,* 27 Ariz. 501, 234 Pac. 553, 38 A. L. R. 825; *Zastrow* v. *Knight,* 56 S. D. 554, 229 N. W. 925, 72 A. L. R. 379.

We conclude that the debt and mortgage lien were not barred by limitation when plaintiff filed his complaint.

By the next assignment the defendant invokes the equitable rule which forbids a fiduciary or trustee from making a profit at the expense of those for whom he is acting, or from preferring himself to his beneficiary; or, differently stated, the equitable rule which requires an agent clothed with confidential powers and duties to exercise them faithfully and honestly for his beneficiary to the exclusion of his own interest or profit. This rule is founded upon positive law and public policy and not upon estoppel, as defendant seems to think. It is stated by Morse on Banks and Banking, sixth edition, volume I, section 125, as follows:

"The high degree of confidence and responsibility resting upon directors of corporations has often led the courts to regard them as trustees, and to declare the relationship existing between them and the stockholders to be that of trustees and *cestuis que trustent*, respectively. If this can be asserted with regard to the generality of corporations, it is peculiarly and exceptionally true with regard to banking corporations, in whose solvency the whole neighboring community must be at least indirectly interested. A bank of issue may properly be regarded as a *quasi* public corporation. The directors of a bank are not trustees for the stockholders alone, but they owe an even earlier duty to the depositors, and, if the bank exercises the privilege of circulation, still a prior duty to the public at large. The law is, as it ought to be, very jealous in exacting the strict and thorough performance of these duties, and it is in the scrutiny of possible breaches of them that the rigid rules which govern trustees have been applied. It is not enough to exculpate a director, that no actual dishonesty can be shown, that he cannot be positively proved to have been influenced by interested motives. Like a trustee, he is absolutely prohibited from the performance of those questionable acts wherein his conduct may be wholly free from blame, but where the bias of self-interest is strong, and may influence him even without his own recognition of the fact. A director, who

wishes to keep completely within the protection of the law, must look to something more than the mere integrity of his own intentions.''

See, also, Michie on Banks and Banking, vol. I, p. 166, § 71.

We will examine the facts to see if plaintiff, as president and as a director and as a member of the loan committee of the bank, in lending the ginning company some $18,000, at a time when the ginning company was indebted to him upon a note and mortgage for $25,000 long past due and upon which no interest had been paid for more than five years, was acting in accordance with his duty towards the bank, its stockholders, creditors, and depositors.

The plaintiff was well acquainted with the ginning company from its organization. He was a stockholder in March, 1921, when he loaned it the $25,000 here involved. The Citizens State Bank had loaned the ginning company ''for the erection of the (ginning) plant'' a sum of money, and it was to take up this loan that the plaintiff advanced the $25,000 to the ginning company. From that time on it may be assumed that he at least had the familiarity with the ginning company's financial condition that the lender of such a large sum of money would ordinarily have of the assets of his borrower. The president of the ginning company was L. L. Steward, who was also the cashier of the Citizens State Bank. On July 2, 1930, the date upon which the ginning company acknowledged the justness of the debt represented by the note and mortgage, the plaintiff owned some 18 or 20 shares of the ginning company and Steward about 97 shares. The two of them controlled 120 shares, being a majority thereof. The evidence does not show when the plaintiff acquired his stock in the ginning company or when he and the cashier of the Citizens State Bank acquired a control of the stock of the ginning company. They had this ownership

and control on July 2, 1930, and, in the absence of any showing to the contrary, we think it fair to assume that such control extended back at least over the years 1928, 1929, and 1930, when the bank's funds to a sum in excess of $18,000 were loaned to the ginning company, with no security or collateral except cotton bale receipts in the sum of $5,191.85. It is but a fair inference we think, from the fact that the ginning company had paid no interest on its note after September 21, 1923, and had never paid any part of the principal, that it was in straitened financial circumstances and unable to meet its obligations—facts well known to the plaintiff. The evidence is that the ginning company "closed" in the year 1928. From this we assume that it had suspended business. So that it appears that all, or practically all, of the loans made to it by the Citizens State Bank, were after it had ceased to function as a ginning plant.

Plaintiff, while admitting that he knew of these loans, stated he was not in active charge of the bank's business. Plaintiff was an officer of the bank in three capacities, that of president, director and member of the loan committee.

Section 239 of the Banking Law (chapter 8, sections 209–272, Rev. Code 1928) provides:

"The board of directors or a committee thereof consisting of not less than three members, two of whom shall not be active officers, of the bank shall meet at least once in each month, and shall at such meeting examine the loans and investments made by the officers thereof since the last meeting of such board or committee, and shall review the other transactions of such bank. It shall cause to be spread upon the records of such bank, in a book kept for that purpose, the minutes of such meetings and all its actions thereat, including the approval of all loans required to be approved by the board, which minutes shall be signed by at least the presiding officer and the secretary of such meeting."

In view of the duties here placed upon the plaintiff because of his triple functions, we think it was the intention of the law to charge him with knowledge of the bank's loans, whether as a matter of fact he knew of them or not. It was his bounden duty to find out whether the loans being made to the ginning company were legitimate or not. These loans were all in excess of $500, and section 223 of the Banking Law provides that all unsecured loans in excess of $500 shall be supported by a sworn financial statement of the borrower, giving his true standing, etc. No such precaution was taken by the officers of the Citizens State Bank.

The question arises: Who, under the circumstances, should sustain the loss of the money loaned and advanced to the ginning company, the creditors, depositors and stockholders of the bank, or the officer and director of the bank who extended the credit to the ginning company. It is clear that one or the other must sustain the loss. It seems to us that every consideration of justice and square dealing demands that the latter's mortgage lien be declared inferior to the claim of the superintendent of banks, who in this case represents the creditors and depositors and stockholders of the bank. The ginning company was indebted to the bank and also to the plaintiff.

It is stated in Michie on Banks and Banking, volume I, section 72:

"Where the same person is indebted both to the bank and to one of its officers individually, such officer, in adjusting these debts, has no right to secure the debt owing to him as an individual to the exclusion or injury of the debt held by the bank, and upon a readjustment in a court of equity, the court will see that the obligation owing to the bank is satisfied first."

We think the rule stated should be enforced in this case.

The plaintiff should receive no better or different treatment than if he had no mortgage at all. His note and mortgage were due one year after date. He permitted them to run for ten years without any record change or record notation of renewal or extension. If he had intended to insist upon a hundred per cent. collection of his mortgage, he should have openly manifested such intention by bringing suit to foreclose, or, in lieu thereof, had it renewed and re-recorded. Instead of doing either, he pursued the "shady" course, through the means of an interlocking set of officers, of securing secret extensions and acknowledgments, giving to all of the rest of the world the impression that his mortgage had been satisfied or outlawed. Another very significant circumstance is that the plaintiff and Steward, respectively president and cashier of the bank, owned or controlled a majority of the stock of the ginning company, and were naturally deeply and vitally interested in its being a financial success. They used the bank's money for that purpose and not as a legitimate loan to a reliable and reasonably safe borrower. Upon no other reasonable or legitimate theory than that the ginning company was a "pet" of the plaintiff and its president, Steward, could these funds of the bank have been advanced or loaned to the ginning company.

The plaintiff's mortgage lien is therefore subject to the rights of the receiver of the bank. The judgment of the lower court is erroneous in not so holding. It is accordingly reversed and the cause remanded, with directions that judgment be entered in accordance herewith.

McALISTER, C. J., and LOCKWOOD, J., concur.