259 P.2d 569

**PATRICK et ux. v. COCHISE HOTELS, Inc. et al.**

**No. 5611.**

Supreme Court of Arizona.

July 17, 1953.

Richey & Herring, of Tucson, for appellants.

Jerman & Jerman, of Phoenix, and Wesley E. Polley, of Bisbee, for appellees.

WINDES, Justice.

Suit by Walter W. Patrick, appellant, to foreclose a real estate mortgage on the Gadsden Hotel in Douglas, Arizona, against Cochise Hotels, Inc., appellee, hereinafter referred to as Cochise Hotels. Unless otherwise designated, all dates mentioned refer to the year 1950.

We have read the entire record, and while the court made very voluminous findings, some of which are not necessary to a correct decision, there is no substantial dispute concerning the essential facts. There is some conflict in the evidence as to certain conversations by the interested parties, but the important undisputed facts, and those upon which the court had ample evidence to find and did find, are substantially as follows:

In the year 1948, Cochise Hotels became the owner of the Gadsden Hotel, upon which there was a first mortgage in favor of the Connecticut Mutual Life Insurance Company. Cochise Hotels executed a second mortgage, with the Valley National Bank of Phoenix as mortgagee, in trust for Patrick, Ben Williams, and Ezra Warner as beneficiaries. The mortgages provide that in the event taxes are not paid and are delinquent, the whole amount of the principal sum may become due at the option of the mortgagee. Simultaneously with the execution and delivery of the note and mortgage to the bank, it and the beneficiaries Patrick, Williams and Warner executed a trust agreement, the corpus of the trust being the second mortgage.

In August, 1950, Cochise Hotels employed Patrick as manager with full and complete power to operate the hotel without interference and to collect and expend its funds in connection with the operation thereof. It was understood that in the event funds from the operation of the hotel were insufficient, they would be furnished upon the request of Patrick; and on several occasions he requested certain sums of money, which sums or a portion thereof satisfactory to him were immediately supplied. At the time of Patrick's employment he had purchased Williams' and Warner's interest in the second mortgage, and the officers of Cochise Hotels at all times during said employment knew he was thus beneficially interested, and they

did not intend that he surrender his rights as second mortgagee when he became employed.

Taxes on the hotel would become delinquent on November 7th, and Cochise Hotels, through its officers, knew this situation and knew that failure to pay such taxes before that date could cause a breach of the conditions of both the first and second mortgages. One J. Edwin Goldman, an officer of Cochise Hotels, after December 11th secured from the first mortgagee an extension of time to January 1, 1951, to pay the taxes before breach of condition of the first mortgage could be declared, and prior to December 22nd Patrick knew of this situation.

On December 22nd, Max Hofmann, an officer of Cochise Hotels, phoned Patrick from Safford, Arizona, making inquiry concerning affairs of the hotel and was advised that everything was progressing satisfactorily, no mention being made concerning the delinquent taxes or that Patrick had any intention of paying the same with his personal funds. Hofmann advised Patrick he would be in Douglas the following day, the 23rd. On the morning of the 23rd and before Hofmann arrived, Patrick, in company with Mr. Richey, his counsel and the assistant secretary and statutory agent of Cochise Hotels, went to the county seat and paid the taxes with Patrick's individual money, taking the tax receipt in the name of the Valley National Bank, Patrick being at this time the agent of the Cochise Hotels. Upon Hofmann's arrival on the afternoon of December 23rd, he was advised by Patrick that the latter had paid the taxes out of his own money. Instantly Hofmann, as an officer of the Cochise Hotels, produced his check and offered to make full and complete reimbursement direct to Patrick, Patrick stating in response thereto that he did not desire to be reimbursed but he wanted to accelerate his mortgage. The refusal to accept the check was for the sole reason that he desired to take advantage of such acceleration, and the fact that a check was offered was not the reason of such refusal.

On December 26th, an attorney for Cochise Hotels offered to pay to the Valley National Bank as trustee holding the second mortgage, the full amount of the taxes, penalties and interest. This offer was refused upon the ground that the bank was not interested in the matter further since the taxes had been paid and any default had been cured. This offer was not refused because cash was not offered or because of the form of the offer, the bank indicating that a tender of cash if made would be refused.

The court further found as follows: that the Cochise Hotels relied upon Patrick to pay the taxes as managing agent of the hotel; that on November 7th and on many occasions both before and thereafter Patrick had sufficient funds in the account with the Cochise Hotels to pay the taxes but not sufficient funds therefor and at the

same time to meet all current expenses; that Patrick deliberately failed to pay the taxes with the intention of creating a breach of the second mortgage contract so that he as the second mortgagee would be in a position to benefit personally from the default at the expense and to the detriment of Cochise Hotels; that the bank resigned as trustee and delivered the second mortgage to Patrick on January 22, 1951; that Patrick knew the officers of Cochise Hotels had the utmost faith and confidence in his ability and good faith to manage the complete operation of the hotel, but that Patrick breached this confidence and deliberately concealed from the officers of Cochise Hotels his intention to pay the taxes from his own funds and to accelerate the second mortgage.

Judgment was in favor of Cochise Hotels and after denial of a motion for new trial, this appeal is presented with thirteen extensive assignments, most of which are technical and are not prejudicial. We shall consider such assignments in the order deemed advisable.

In addition to the foregoing findings, there are a few evidentiary matters worthy of mention. In the negotiations leading up to Patrick's employment, Hofmann by letter advised Patrick that he, Hofmann, was the one that was always obliged to furnish the money and that he would furnish whatever was necessary and Patrick was to be the exclusive manager with power to sign checks. It also appears that as a result of a conversation between Goldman and Patrick that Goldman was to attempt to get an extension of time to pay the taxes. In this he was successful and Patrick was so advised on December 18th. On December 23rd, when Hofmann arrived in Douglas and was advised that the taxes had been paid Patrick testified that he, Hofmann, was shocked and surprised to learn of this fact and immediately offered reimbursement in the form of a check and he told Hofmann, "I do not want a check, Mr. Hofmann. I want to accelerate my mortgage." Also at that time Patrick, contrary to the truth, advised Hofmann that Richey and Herring were not his attorneys, giving as a reason for so doing that they were representing the Cochise Hotels and he did not think it would be proper for them to represent both sides. Thereafter Stanley Jerman came into the picture as attorney for Cochise Hotels, and without success made several attempts through contacting the bank, Patrick and the attorneys for Patrick, to refund whatever had been expended in payment of taxes, penalties, and interest, but such attempts were refused because of the insistence on the part of Patrick that the mortgage be accelerated.

From the foregoing lengthy statement of facts and evidentiary matters, we are presented with this situation: we have a manager of a hotel with complete authority in that respect, including control of its funds derived from the operation thereof

and any other funds that the officers of the owners might deliver to him for such purposes. This manager with the knowledge of his employer was the owner of the beneficial interest in a sizable second mortgage on the hotel in the approximate sum of $179,000. The mortgage was in favor of the Valley National Bank as trustee for the manager. There was a first mortgage in favor of an insurance company. Taxes became delinquent, and the manager and agent of the hotel company, under the circumstances heretofore related, paid the taxes with his own funds and declared the entire indebtedness immediately due under the acceleration clause of the second mortgage, for the asserted reason that the Cochise Hotels did not furnish adequate funds to pay both the current expenses of the hotel and taxes. This was done without giving the principal, the employer, notice of his intention to pay the taxes for himself personally and to declare acceleration of his mortgage. The cardinal point in this lawsuit is whether the plaintiff, while he was the agent of the hotel company in the capacity of its manager, had the right, under such circumstances, in order to protect his interest as beneficiary under the second mortgage, to pay these taxes for himself to the detriment of the interest of his principal. Appellant contends that this situation does not warrant the court's judgment in favor of the Cochise Hotels.

Counsel for neither side has cited an authority directly in point and after extensive search the court has found none. Both parties rely upon the general principles announced in Volume 2, Restatement of the Law of Agency, Sections 418 and 464. Applicable provisions of Section 418 and comments thereunder are as follows:

"An agent is privileged to protect interests of his own which are superior to those of the principal, although he does so at the expense of the principal's interests or in disobedience to his orders." Section 418.

" * * * In such cases, the agent's duty is to deal fairly with the principal, giving information to the principal regarding the situation and *protecting the principal's interests so far as is consistent with the protection of his own.* * * *" Comment a, Section 418. (Emphasis supplied.)

" * * *, and where an agent acts in the protection of a lien upon his principal's goods which he has acquired either by the performance of services or by advances (see Sec. 464)." (Comment d, Section 418.)

Turning to Section 464, we find an expression of the duties of an agent who for some reason has a lien on his principal's property, the subject matter of the agency. This situation most generally arises when a factor has made advances or incurred

expenses on behalf of the principal and has a lien on the property of the principal to secure the same. When the agent seeks to enforce such lien, his duties to his principal are stated thus:

"The power of sale must be exercised, as far as is consistent with the factor's interest, *with due regard to the interests of the principal.* The factor has a duty of using care to obtain the best price and ordinarily before making a sale has a duty of notifying the principal so as to afford him an opportunity of paying what he owes." Comment on clause c, Section 464. (Emphasis supplied.)

Another important principle is that where an agent proposes to act adversely to the interests of his principal he should communicate to the principal all material facts in connection with the transaction, and a fact is material when it is one which the agent should realize would be likely to affect the judgment of the principal in giving or withholding consent to the agent's entering into the transaction. Volume 2, Restatement of the Law of Agency, Section 390, Comment a.

Appellant suggests that analogous principles control this case as are applicable to factors having a lien upon a principal's goods. The case of M. M. Walker Co. v. Dubuque Fruit & Produce Co., 113 Iowa 428, 85 N.W. 614, 616, 53 L.R.A. 775, is a case of this character. Therein a commission merchant had a lien on his consignor's property for advances and expenses. The agent sold the property without giving the principal adequate notice and an opportunity to satisfy his lien. The court said:

" * * *. The interest of the principal in the property, the relationship of the parties as principal and agent, and the nature of the transaction are such that subsequent directions should be obeyed, and the goods not sold in disregard of these until the principal has been afforded a reasonable opportunity to discharge the factor's lien, *unless an immediate sale be necessary to save the lien from loss. * * *"* (Emphasis supplied.)

Thus is recognized the sound and just principle that an agent cannot without notice sacrifice the principal's interest in the property unless immediate action is necessary to save the lien of the agent. If the immediate payment by Patrick on December 23rd, before Hofmann could arrive in Douglas, had been necessary to save Patrick's rights and lien under his second mortgage, there would be some reasonable basis for a claim of justification for his action. There being no such emergency, there was no justification.

It appears from the foregoing that an agent who has an interest in the property of his principal is in somewhat of a dual position, from which flows the right to protect his own interest together with the corresponding duty to protect the interest

144

of his principal, if it is possible to do so without sacrificing his own. If it be possible for the agent to secure protection for himself and at the same time prevent damage or detriment to the principal, such is his duty. Stated in another way, it is the agent's duty to deal fairly, give the principal full information concerning his proposed action and protect the principal's interests as far as is consistent with the protection of his own. Comment a, Section 418, supra.

■ Applying these principles to the facts herein, we find Patrick, the agent, paying these taxes with his own funds knowing at the time that his interest as a second mortgagee would not be in jeopardy for at least another week, knowing that Hofmann, who was obliged to furnish additional funds for company expenses, was to be in Douglas the afternoon of the day he paid the taxes, and talking to him over the phone the day previous thereto and failing to advise him of his, Patrick's, intention to gain a personal advantage at the principal's expense—this with the further facts that the evidence shows that if Hofmann had been so advised he would have forthwith furnished the necessary funds and would have protected the interest of the Cochise Hotels as well as the interest of Patrick under his mortgage. This is what was attempted after discovering Patrick's acts and intentions. We have no hesitancy in saying that Patrick's dealings in this matter were unfair to the principal, and he cannot gain as a result thereof. Patrick's intention to pay the taxes and to attempt acceleration of the mortgage was a very important fact to Hofmann and if he, Patrick, had any intention of taking such drastic action, it was his duty to so state when talking to him over the phone on December 22nd and give the principal an opportunity to protect the property of the Cochise Hotels, instead of misleading the officer of the Cochise Hotels and advising him that everything was "fine" and thereby lulling him into inactivity until he, Patrick, could hurry to the county seat and get the taxes paid prior to Hofmann's arrival. Patrick would have suffered no harm nor would he have been deprived of his rights by acting fairly and above board, and when no detriment would result to him, it was clearly his duty to give his principal an opportunity to meet the situation. To permit an agent to profit at the expense of his principal under such circumstances would be shocking to the conscience of a court of equity and cannot be allowed. The trial court was not only authorized but compelled to render the judgment it did under such facts.

On January 22nd, the trial court convened for the purpose of hearing an order to show cause. After lengthy discussion by court and counsel it was determined to continue the matter until February 15th, at which time, as the court interpreted the understanding of counsel, the entire case would be heard upon its merits. The court

convened on February 15th, and a dispute arose as to whether the entire case was to be disposed of. The court ruled that it had been agreed that the matter would be heard on its merits, announcing in effect that if it developed additional pleadings or evidence became necessary, opportunity would be given to present the same. Appellant now contends he was prejudiced by being required to go to trial. We have read the transcript and are of the view that the court was warranted in interpreting counsel's discussion as a stipulation to the effect that the case would go to trial on its merits on February 15th. There is no merit to this assignment.

■ Assignments 2 to 6 inclusive and 13 concern claims that the court erred in admitting or excluding certain evidence. Complaint is made that the court erroneously excluded appellant's Exhibit No. 50 marked for identification, which consists of certain hotel registration cards which, if admissible at all, would at most tend to impeach Goldman's testimony concerning the time and place of a conversation between him and Patrick, wherein there was some discussion concerning these taxes. In view of the basis upon which the court is disposing of this appeal, it is relatively unimportant whose—Goldman's or Patrick's—story concerning this conversation is correct. Accepting Patrick's testimony concerning this matter, the final result would be the same; consequently, if it

were error to exclude the exhibit, it was harmless.

■ There was also a chattel mortgage securing the note of the appellant. It is casually mentioned in the complaint and the prayer thereof does ask for a foreclosure of both mortgages. Plainly the gravamen of the cause is to foreclose the real estate mortgage, and the court interpreted it only as a complaint to foreclose the real estate mortgage, excluding the chattel mortgage from evidence. If the court was in error in this respect it of course made no difference, since the court was correct in refusing foreclosure of the real estate mortgage. The only purpose of the chattel mortgage being in evidence would be to permit its foreclosure. If the realty mortgage could not be foreclosed neither could the chattel mortgage.

■ The court permitted witness Stanley Jerman to testify to a conversation that Jerman had with one Victor Pulis on December 26th. Mr. Jerman as attorney for Cochise Hotels went to see Mr. Pulis, trust officer of the Valley National Bank, concerning the possibility of paying the taxes to the bank as the mortgagee-trustee. Mr. Jerman made inquiry of Pulis as to what he, Jerman, could do about paying the taxes, and Pulis refused to accept the same on the ground that it appeared that they had already been paid. There was no error in permitting testimony concerning this conversation.

146

■ On cross-examination, the witness Jerman testified as follows:

"Q. Did you ever offer to him (meaning Patrick) a check made out to his order or to the order of the Valley National Bank for the amount of the taxes, interest and penalties? * * * A. No, I didn't."

On redirect examination Mr. Jerman was asked the following question:

"Q. Why didn't you offer a check made out either to Patrick or the Valley National Bank to Patrick?"

Over appellant's objection witness was allowed to answer as follows:

"A. On the morning of the 27th you (meaning counsel for Patrick) told me in front of Mr. Patrick that you didn't want the money for the taxes; you again told me that evening and I told you I had the checks in my pocket that evening and you didn't want the money. I again told you at Tucson just before foreclosure I had the money, I had it and I could have cashed that five thousand dollar check, on the 27th you could have had it, so I think I offered it at least three times and I told Mr. Patrick I would have it for him at our next meeting; I didn't want to discuss it with him in the absence of his attorney; I made four attempts; it was turned down four times at least."

Permitting the foregoing answer is assigned as error. We fail to see why the witness should not be allowed to express his unsuccessful efforts to reimburse Mr. Patrick for the money expended to pay these taxes. Certainly the witness' explanation showed the futility of making a formal tender when it was made plain to him that such a tender would not be accepted.

■ Objection is made that the court did not allow Patrick to testify to the state of his own mind. The fact is that much of this testimony went in, but in any event, in view of our ruling concerning Patrick's duty to inform appellee that he intended to accelerate his mortgage, his state of mind is immaterial. His very acts constituted fraud, Volume 3 C.J.S., Agency, § 142, and this is true irrespective of what he might say concerning his personal intentions.

■ Appellant offered and the court excluded Exhibit No. 4 marked for identification which consisted of a carbon copy of a purported letter from Patrick to Hofmann dated October 14th, which Patrick testified he wrote, but there was no evidence that Hofmann ever received the same nor was there evidence that it was mailed. It is stated that this is admissible as a verbal act bearing on Patrick's intention. Had he orally stated to himself or anyone else what is contained in the exhibit it would hardly be contended that Patrick should be allowed to testify to such oral statement. Under these conditions, the court properly excluded the exhibit.

It is assigned as error that the court made extensive finding without evidence to support the same. There are listed thirteen findings under this assignment. We have examined them all, and from a reading of the testimony find that eight of these were undisputed facts or that there is ample evidence upon which to base the same. Three of them may not be warranted but they are so nonessential that, assuming they did not exist, the result of the litigation would be the same. One finding objected to, No. 21, does not appear in the abstract of record. One, No. 30, is objected to because it is evidentiary in character. It possibly is subject to this criticism, but such portion thereof as is evidentiary correctly states the evidence and no possible prejudice could result to the appellant therefrom. All in all these objections to the findings amount to a quibble over nonessentials and carry no merit.

Assignments are made to the effect that the court failed to make decisions on material issues of law and that many of the findings are based on misconceptions of the law. These assignments are not worthy of consideration and will not be further referred to.

It is urged that some of the findings are in conflict and do not establish facts upon which judgment could be based. There is no substantial conflict as to essential facts that could possibly be prejudicial to ap-

pellant's rights and the important facts, as heretofore stated, compel the decision rendered by the trial court.

The judgment is affirmed.

STANFORD, C. J., and PHELPS, LA PRADE and UDALL, JJ., concur.