(December 3, 1963)

■    319 EAST 72ND STREET CORPORATION et al., Respondents, v. GEORGE W. WARNECKE & COMPANY, INC., et al., Appellants.

MEMORANDUM BY THE COURT. Judgment entered on July 2, 1963 affirmed, on the law and on the facts, with costs. Appellant points to nothing in the testimony or in law sufficient to impugn the well-considered and comprehensive opinion of the trial court or the propriety of the remedy ordered. Deceit, it is plain, corrupted Warnecke's course from the outset. Espying an opportunity to gain the property for himself, and a substantial brokerage fee in the bargain, and to himself construct the building plaintiffs had planned to erect, he misled plaintiffs into believing he had fruitlessly approached Travelers for a mortgage loan in order to pave the way for the next step in his design. To conceal his personal interest and his scheme to raise a mortgage loan and build upon plaintiffs' land, it was essential that he appear as broker, and that it be understood he was acting as plaintiffs' broker accords with the weight of the evidence. In that capacity he owed a fiduciary's loyalty to plaintiffs and his departure from it justifies the decree. But even were his fiduciary status in doubt the decree is inevitable. Infecting Warnecke's maneuvers was far more than a deviation from "the punctilio of an honor the most sensitive" demanded of a fiduciary (*Meinhard* v. *Salmon*, 249 N. Y. 458, 464). Salmon, though held liable as a fiduciary, was absolved of "a conscious purpose to defraud" (p. 467). Warnecke, whether or not a fiduciary, may not be so absolved. He was aware that plaintiffs would not have sold to him or to anyone on the terms they did, had they known the truth about the Travelers situation, the truth about his own interest. He inveigled them not merely by secrecy but by affirmative misrepresentation. In this context whether he acted as plaintiffs' broker is of small moment. His pretense that he was a broker at all was a material fraud, and the result of his deceptions was that the property came into his hands subject to a constructive trust for plaintiffs' benefit (*Katzman* v. *Ætna Life Ins. Co.*, 309 N. Y. 197; *Fur & Wool Trading Co.* v. *George I. Fox, Inc.*, 245 N. Y. 215; *Falk* v. *Hoffman*, 233 N. Y. 199; *American Sugar Refining Co.* v. *Fancher*, 145 N. Y. 552, 558; Restatement, Restitution, § 166; 4 Pomeroy's Equity Jurisprudence [5th ed.], § 1053; 1 Bogert, Trusts & Trustees [2d ed.], § 44; 89 C. J. S., Trusts, § 139; 4 Powell, Real Property, pars. 593, 594). The mode of restitution directed by the trial court provides Warnecke with all the protection to which a conscious wrongdoer is fairly entitled (Restatement, Restitution,

§ 158, *Comment* d). Not controlling, yet not to be overlooked in this regard, is that Warnecke even took over the very building plans plaintiffs had caused to be prepared.

EAGER, J. (dissenting in part). I would modify the constructive trust and accounting provisions of the judgment to limit a recovery by plaintiffs to the value of the land conveyed with the accompanying apartment building plans, together with the proportionate share of any profit attributable to defendants' use of the same in the apartment house venture. In addition, the plaintiffs are entitled to recover back the amount of the commissions paid, with interest. The foregoing, in my opinion, is the judgment which should have been rendered by the trial court on the pleadings, the proofs and its findings; and, of course, this court, on the appeal to it, has power to grant such judgment.

The plaintiffs, upon allegations of fraud, including breach of fiduciary duties owing by the brokers, by their second cause of action, as eventually amended, sought an accounting by the defendants. The findings of the trial court were merely to the effect that the defendant Warnecke and his company were employed by the plaintiffs as brokers to sell the unimproved lot of land and the apartment building plans and that, in breach of their fiduciary duties as brokers, they purchased the property for themselves. Thereupon, the trial court concluded that the plaintiffs were entitled to treat the sale as avoided and to hold defendants accountable as constructive trustees.

On the basis of the plaintiffs' election to avoid the sale and on the findings of the court, the defendant vendees, acquiring title in the fraudulent breach of fiduciary duties, and the subsequent *mala fide* title holders were properly chargeable in equity as trustees. This is clear. " ' If one party obtains the legal title to property, not only by fraud or by violation of confidence or of fiduciary relations, but in any other unconscientious manner, so that he cannot equitably retain the property which really belongs to another, equity carries out its theory of a double ownership, equitable and legal, by impressing a constructive trust upon the property in favor of the one who is in good conscience entitled to it, and who is considered in equity as the beneficial owner. Courts of equity, by thus extending the fundamental principle of trusts, * * * are enabled to wield a remedial power of tremendous efficacy in protecting the rights of property.' " (*Frier* v. *J. W. Sales Corp.*, 261 App. Div. 388, 391, quoting from 1 Pomeroy's Equity Jurisprudence [4th ed.], § 155, pp. 190, 191.) Here, the plaintiffs " properly resort to equity not only to obtain an accounting but to follow the fund which was placed in the hands of the defaulting trustee and appropriated for his own purposes by the individual defendant. Equity will intervene and declare the wrongdoer a trustee. (*Falk* v. *Hoffman*, 233 N. Y. 199.) " (*Frier* v. *J. W. Sales Corp., supra*, p. 392.)

The defendants, chargeable in equity as constructive trustees, are accountable to plaintiffs for what they fraudulently acquired, namely, the lot of land with the accompanying plans, and the profits in their use of the same for the period of accountability. But, here, the lot, as such, acquired by the defendants as equitable trustees could not be restored to the plaintiffs. When sold by plaintiffs and acquired by defendants, it was a vacant and unimproved lot which, with the plans, was found by the court to have a market value of $655,000. Now there stands erected thereon an apartment house building costing $3,675,000, and the lot and improvements are subject to a mortgage for approximately $3,500,000, in favor of a third person not a party to the action. Furthermore, it is now being operated as a completed apartment house venture with approximately 200 outstanding tenancies.

Here, upon the termination of the broker-client relationship between the plaintiffs and the defendant brokers, the latter no longer stood in any fiduciary relationship with the plaintiffs. The situation is not the same as in the case of the true trustee or the executor who remains in a fiduciary relationship during the continuance of the trusteeship or executorship; or a confidential employee, or an official or director of a corporation who so remains during the continuance of his employment or office; or a partner or coventurer continuing to be charged with fiduciary responsibilities during the partnership or joint venture. Such are true fiduciaries and they continue to be bound by the obligations of fidelity or loyalty in trust affairs until the termination of the trust relationship. Here, however, the obligations of fidelity or loyalty, continuing only while the defendant Warnecke and his company acted as brokers for the plaintiffs, ended when the defendants acquired title and proceeded on their own to develop the property.

The trial court, however, has in effect held that the defendants should be treated as constructive trustees of and accountable for the entire property, as it presently stands, six years after the breach of the fiduciary duties, that is, not only as trustees of the lot of land acquired from plaintiffs but also of the multimillion dollar apartment house thereon with its valuable tenancies and appurtenances. Clearly, however, the erection of the apartment building and the development of the apartment house project were undertaken and carried out by the defendants on their own responsibility. The defendants proceeded with the apartment house venture independently of any former fiduciary relationship with plaintiffs, and, in connection therewith, principally used funds and property in which plaintiffs had no interest and over which they had no control. Consequently, the apartment house building, with tenancies and appurtenances, was not acquired and is not held as such by the defendants as trustees for plaintiffs. And, certainly, on any sale of the same, the entire proceeds thereof would not be held by the defendants as trustees.

So, quite clearly, under the circumstances here, the defendants, in their accountability to plaintiffs for what the defendant brokers wrongfully acquired, are not chargeable for the profits on the apartment house venture as such. This is in accordance with the authorities. For instance, it is the general rule that, where a person, receiving funds as a constructive trustee, commingles it with funds of his own and uses the total in acquiring land or other property, the claimant is entitled to follow the trust funds in and to have an equitable lien upon the land or property purchased and, in addition, is entitled to a pro rata share of such land or property, if he so elects. But in such case, the wrongdoer "is liable only for a proportionate part of the profits realized based upon the ratio of the amount of money misappropriated to the original commingled mass". (*Marcus* v. *Otis,* 169 F. 2d 148, 150.) And in Restatement of the Law, Restitution, it is said that "where a person wrongfully uses the property of another together with his own property in acquiring other property * * * the claimant is entitled to an equitable lien for the value of his property upon the property so acquired; and, if the wrongdoer was a conscious wrongdoer, he is entitled at his option to a share of the property so acquired in such proportion as the value of his property bore to the value of all the property used in acquiring it." (§ 214, p. 865.)

Along the same lines, there is the statement in Clark, Equity (§ 298, pp. 398–399) viz.: "If at any time the trustee should invest the commingled funds or any part thereof in property, the *cestui's* equitable lien will attach to this property; and if the property should not increase in value, the *cestui* will not be interested in any other property remedy. But if there should be such increase it would seem that he ought to be allowed to avail himself of his

proportional part of the profit; this can be accomplished by imposing a constructive trust upon the property, and thus giving the *cestui* a *pro rata* share therein. By the weight of authority and the better view the *cestui* is entitled to choose between the equitable lien and a proportional part of the property." (To the same effect, see 4 Scott, Trusts [2d ed.], §§ 515, 516, 517.2.)

Finally, what was said in *Holmes* v. *Gilman* (138 N. Y. 369, 378–379) is pertinent and seems controlling here, to wit: "Where moneys have been misapplied and have been used as a portion of a larger amount which has been invested in other property, the property thus acquired does not as a whole belong to the owner of the moneys misapplied. It does not belong to him because it has not been purchased or acquired wholly with his money or funds, and hence it is that such property is held charged with a lien at least to the amount of the trust funds invested in it. It is not necessary to here decide it because we take another view of the facts, but I am not at all prepared to admit that under no circumstances is the *cestui que trust* entitled to recover back anything more than the amount of his property and interest, where there has been a mingling of funds. In case the trustee took a thousand dollars of trust funds and five hundred of his own, and purchased property which advanced in value to twice its original sum, I have seen no case where the point has been determined that the whole increased value belongs to the trustee, and that only the original sum wrongfully taken and interest can be given to the *cestui que trust*, although it was by reason of the wrongful use of the trust funds that the trustee was enabled to realize such value. If in such case the *cestui que trust* were not allowed to at least participate proportionately in this increased value it would appear to be a violation of the principle that the trustee cannot ever be permitted to make a profit out of the use of the trust funds. It seems to me to be a case for the application of the doctrine that the parties became co-owners of the property at the option of the *cestui que trust*, in the proportion which their various contributions bore to the sum total invested."

So, I would hold that where, as here, the funds or property held by a person as constructive trustee represent but a small portion of the reasonable cost of the acquisition by the trustee of a valuable improved property, then the claimant, following his funds and property into the improved property, is not entitled to the whole of the profits or gains realized on the acquisition of the same by the trustee. He is only entitled to share in any profits or gains in such proportion as the amount or value of his funds and property bear to the cost of the whole. This, as indicated by the authorities above, is the general rule (see, further, *Madison Trust Co.* v. *Carnegie Trust Co.*, 167 App. Div. 4; *Matter of Clark*, 69 Misc. 527; cf. *Equity Corp.* v. *Groves*, 294 N. Y. 8); and there is no good reason why this rule should not be applied here. Suppose that originally we had here a $1,000 lot and a building which cost $1,000,000; would we think of holding the brokers accountable to the former lot owner for the profits on a $1,000,000 venture? Certainly not. One rule should not ordinarily be applied in one case where the trust fund contribution is comparatively small and another rule applied where it is large but still a relatively minor factor in the total funds invested in the entire venture.

On the basis of the findings of the trial court, all that the defendants wrongfully obtained from the plaintiffs in fraudulent breach of alleged fiduciary duties was the unimproved lot and the apartment building plans; and the plaintiffs never had any interest, beneficial or otherwise, in the development of the apartment building project or in the capital invested in the same. But, the court here, by its decree, has divested the defendants of the gains on their independent capital invested in the over-all project and has awarded the same

to the plaintiffs. This is tantamount to the broadening of the constructive trust relief as a remedial device to embrace what amounts to the assessment and awarding of exemplary damages. But, the awarding of such damages is not obtainable as a matter of course as a part of constructive trust relief. The right thereto, as a matter of substantive law, depends upon whether or not the plaintiffs have pleaded and established such a case of fraud and malice as to entitle them to damages of this nature. (*I. H. P. Corp.* v. *210 Cent. Park South Corp.,* 12 N Y 2d 329, 333; *Walker* v. *Sheldon,* 10 N Y 2d 401.) And, in this type of action the defendants are entitled to know whether or not the plaintiffs are claiming such damages; and, where so claimed, the defendants may have a right to a jury trial of the issues of fact with relation thereto. (See *I. H. P. Corp.* v. *210 Cent. Park South Corp., supra.*) In any event, despite pleading deficiencies here (the plaintiffs claiming only an accounting), the trial court expressly concluded that, in its discretion, the plaintiffs' "prayer for exemplary damages is denied". Such a conclusion, in the posture of this case, renders unsustainable that portion of the relief which divests the defendants of the profits on their independent capital.

In view of the foregoing, the trial court was not warranted in giving the plaintiffs the profit on the entire apartment building venture. Plaintiffs would, however, be entitled to a lien upon the property for the (1) amount of the commissions, with interest, (2) the value of the land and building plans, with interest, less sums received on account thereof, (3) their proper proportionate share of the profits and gains on the apartment house venture, and (4) to a sale of the property to satisfy such lien. If the portion of the profits and gains to which plaintiffs are entitled is not properly determinable on the record, then, in that event, a sale may be directed to determine the amount of the profit and gains to be apportioned, if any.

Botein, P. J., Breitel, Rabin and Steuer, JJ., concur in decision; Eager, J., dissents in opinion.

Judgment entered on July 2, 1963 affirmed, on the law and on the facts, with costs.