Scally *v.* Josselson et al., Appellants.

*Robert S. Daniels,* with him *Alter, Wright & Barron,* for appellants.

*Leonard M. Mendelson,* with him *William R. Grove, Jr.,* and *Hollinshead and Mendelson,* for appellee.

OPINION PER CURIAM, April 4, 1973:
Judgment affirmed.

———

DISSENTING OPINION BY CERCONE, J., filed June 14, 1973:

This is an action of assumpsit brought by plaintiff Yola Mae Scally, a licensed real estate broker, against defendant, Alex L. Josselson, a licensed real estate salesman, and his two corporations. The corporate entities were properly disregarded by the lower court under the facts of this case. Mrs. Scally sued for commissions

which she alleges to have earned as a result of an oral contract made between her and the defendant and which was breached by him. A verdict was returned in favor of plaintiff in the sum of $45,000 and defendant appeals on grounds of error by the lower court in refusing to admit certain evidence.

At trial plaintiff Scally testified that officials of the Monsour Hospital had asked her to help them secure financing necessary for expanding the facilities of the hospital. Plaintiff was referred to defendant Josselson as the person who might be able to procure this financial assistance. At a meeting at which plaintiff, defendant, and hospital representatives were present, the financial needs of the hospital were discussed. Plaintiff contends that after the hospital officials left the meeting, she and defendant agreed to a "co-brokering" or splitting of commissions in the event defendant was successful in securing financing for this project. The defendant on the other hand contends that no contract was made between them. Defendant further contends that nothing resulted from the first meeting with the hospital officials and in April 1968 all papers were returned by the defendant to the hospital and the matter was considered closed; that after an hiatus of approximately six months a new approach was made to the defendant by the Monsour Hospital which then resulted in defendant's procurement of financial assistance for the hospital. A loan was arranged whereby Monsour Hospital received the sum of $3,000,000 and a brokerage fee was paid to defendant by Monsour Hospital, calculated at three points on the total loan or $90,000.

At trial, in 1972, defendant offered to prove certain expenses which he had incurred in procuring the necessary financing for the hospital and the lower court refused to have this evidence admitted.

Although I would not disturb the jury's determination that a binding oral contract was consummated between the parties, I believe the lower court erred in refusing to allow defendant to introduce into evidence proof of his expenses in arriving at a basis for computing the sharing of commissions between the parties. Plaintiff was permitted to introduce evidence as to the general meaning which she believed should be given to the term "co-brokering". Likewise, defendant should have had the opportunity to show that co-brokering or sharing commissions under these particular facts should at least be interpreted to allow the deductions for expenses necessarily incurred in order to secure the financing for this project.

Taking the view that the relationship above described is analogous to a simple partnership, the Uniform Partnership Act provides that the partnership must indemnify every partner in respect to payments made and personal liabilities reasonably incurred by him in the ordinary and proper conduct of its business, or for the preservation of its business or property,[1] and if the partnership is unable to indemnify a partner, the obligation falls on the individual co-partners.[2] The right to reimbursement of brokers is summarized in 12 Am. Jur. 2d, stating in part: "The courts uniformly recognize the right of a broker to reimbursement for sums advanced by him with the express or implied authorization of his principal; in such case the broker is entitled to recover not only the actual amount advanced but interest thereon from the date of its advancement. The general rule—that where an agent is employed or directed by another to do an act in his behalf, the law implies a promise of indemnity by the

---

[1] Uniform Partnership Act of March 26, 1915, P. L. 18, Part IV, §18(b), 59 P.S. §51(b).

[2] Uniform Partnership Act, §40.

principal for damages resulting to the agent proximately from the execution of the agency, *and of reimbursement for necessary expenses advanced or incurred by the agent in order to consummate that which he is directed to do*[5] . . . *applicable to the employment of a broker.*"[6] (Emphasis added)

This rule should have equal application to a "partnership" between real estate broker and real estate salesman whereby financial obligations are incurred by one of the parties for the necessary purpose of carrying out the mutual objectives of their "co-brokerage" relationship.

Section 337(a) of the Restatement of Contracts and Section 158 of the Restatement of Restitution both lend support for the allowance of expenses in this situation. They state, respectively: "[337(a)] Where the defendant commits a breach of a contract to pay a definite sum of money . . . interest is allowed on the amount of the debt . . . from the time performance was due, *after making all the deductions to which the defendant may be entitled.*" (emphasis added) "[158] A person is entitled to specific restitution of property from another or to the product of such property only on condition that he compensate the other for expenditures with reference to the subject matter which have inured to his benefit, to the extent that justice between the parties requires."

I would remand to the court below for new trial limited to the issue of expenses as outlined above.

---

"5 See 2 Am. Jur. 2d, AGENCY, §243.

"6 Bibb v. Allen, 149 U.S. 481, 37 L. Ed. 819, 13 S. Ct. 950; Brower v. Fenner & Beane, 237 Ala. 632, 188 So. 240; Mandeville v. Pooler, 60 R.I. 273, 198 A. 235."