682 P.2d 1

Robert T. EDWARDS, a single man, Southwestern Properties, a joint venture, and Townhomes of Skyline, an Arizona corporation, Plaintiffs/Appellees,

v.

Brian L. HAUFF and Beverly J. Hauff, husband and wife, and Intrex Corporation, a foreign corporation, Defendants/Appellants.

No. 2 CA–CIV 4923.

Court of Appeals of Arizona, Division 2.

March 26, 1984.

**374**

Gabroy & Leather by Stefani J. Gabroy, Tucson, for plaintiffs/appellees.

Schorr, Leonard & Felker, P.C. by Judith B. Leonard, Tucson, for defendants/appellants.

## OPINION

BIRDSALL, Chief Judge.

This appeal is from the judgment of the trial court granting the plaintiffs/appellees a constructive trust in and to the interest of the defendants/appellants in certain real property in Pima County. The trial court also dismissed count six of the appellants' counterclaim and the appeal is also from that portion of the judgment. The case was tried with an advisory jury which found in favor of the plaintiffs and the court adopted that verdict.

The evidence relevant to the issues presented on appeal follows. In the fall of 1979 appellee Robert T. Edwards and James Manzolillo purchased for development certain property at Skyline Country Club in Tucson. Townhomes of Skyline was incorporated for that purpose. Edwards engaged the appellant, Brian L. Hauff, to manage the development and to acquire other investment properties in Arizona. A one-page contract representing this agreement was prepared in October 1979 and was eventually signed by Edwards as managing partner of the joint ventures, and Hauff for Intrex, his wholly-owned, foreign corporation. The agreement provided that Hauff was to receive a percentage of profits from the venture and to have a salary draw of $3,000 per month. This was later increased to $5,000.

Hauff began his employment in about November 1979. In addition to his salary, he was provided a home, car and guest privileges at the country club. Edwards subsequently acquired the Manzolillo interest. The Skyline development venture was eventually unsuccessful.

In March 1980 Hauff, on behalf of Skyline, began negotiating for the purchase of 500 acres of raw land near Tucson known as Star Pass. On April 29, 1980, he signed for Skyline a deposit receipt and agreement for the purchase of this property and signed and delivered a check for $10,000 drawn on the Skyline account. The agreement actually gave Skyline an option to purchase the property since it was subject to the buyer obtaining a feasibility study and subsequent confirmation of the purchase by a later date. The total purchase price for the land was $1,344,000 to be paid with interest over a period of years. It would have required a considerable investment in a relatively short time with no foreseeable immediate return. In May 1980 Hauff told Edwards about the Star Pass property and the two of them viewed it together with the involved sales agents. Afterward, Edwards told Hauff to see if he could restructure the agreement to make it more financially attractive.

Subsequently in May through June 1980 Hauff found an investor, Peter Voorlas, who was willing to make the required payments for the Star Pass contract; but did not inform Edwards. On June 9 Hauff, Voorlas and his sons entered into a written joint venture agreement to exercise the Star Pass option. By letter to the title

company, which held Star Pass as trustee and was also designated as the escrow agent, Hauff, again signing for Skyline, assigned all of its interest in Star Pass to the new syndicate. Under the new agreement he was a 50 percent owner of that syndicate. He substituted his own $10,000 check and requested refund of Skyline's earnest money. Subsequently the new venture conveyed the property to appellant, Stewart Title and Trust of Tucson as trustee, Trust No. 2191, with the new venture as beneficiary. The sale closed. Edwards first learned about all of this several months later from a third party.

In this appeal, Hauff contends that the contract wherein he was to acquire investment properties in Arizona (other than Skyline) is too indefinite to enforce; that the trial court erred in dismissing count six of his counterclaim which alleged an oral agreement that he was to have a right of first refusal on investment opportunities found by Edwards, and that the trial court should have ordered restitution to him for his investment in Star Pass. We affirm.

■ The argument that the contract was too indefinite is misplaced. Hauff clearly owed fiduciary duties to Edwards as a result of his employment. *See Geomet Exploration, Ltd. v. Lucky McUranium Corporation*, 124 Ariz. 55, 601 P.2d 1339 (1979), cert. denied, 448 U.S. 917, 101 S.Ct. 38, 65 L.Ed.2d 1180 (1980); *Patrick v. Cochise Hotels, Inc.*, 76 Ariz. 136, 259 P.2d 569 (1953); *Valley National Bank of Phoenix v. Milmoe*, 74 Ariz. 290, 248 P.2d 740 (1952); *Button v. Wakelin*, 41 Ariz. 84, 15 P.2d 956 (1932). An agent is duty bound not to acquire a private interest antagonistic to that of his employer. *Mallamo v. Hartman*, 70 Ariz. 294, 219 P.2d 1039 (1950). Hauff was obligated to inform Edwards of the availability of an investor willing to provide the necessary capital to acquire Star Pass. *See Patrick v. Cochise Hotels, Inc., supra*. In their relationship, Hauff was duty bound to act on behalf of Edwards, subject to his control, and could have acquired Star Pass only with the informed consent of Edwards. *See Valley*

*National Bank of Phoenix v. Milmoe, supra.* The conduct of Hauff was blatantly in violation of these duties owed to Edwards. The facts of this case are extreme. The evidence was overwhelming that Hauff secretly acquired his interest in Star Pass intentionally excluding Edwards. Both the advisory jury verdict and the judgment of the trial court were unquestionably correct.

■ The trial court did not allow count six of the counterclaim to go to the advisory jury. After Hauff assumed his duties at Skyline, and his duty to acquire other investment opportunities in Arizona, Edwards acquired an interest in some real property in Maricopa County. Hauff contends he was not offered an opportunity to participate in that venture. (Actually there is evidence that he was given such an opportunity.) Hauff testified that during negotiations leading to their written agreement, they discussed an agreement whereby neither would purchase an interest in property without first having offered the other an opportunity to participate. He testified only that it was his "understanding" that this was their agreement. That was the extent of the evidence pertaining to count six, except that Edwards denied any such agreement. Their written agreement provided only that Hauff was to be responsible for "the acquiring of other investment properties in the Arizona market." The agreement also provided that it represented "the whole of the agreement between the parties", and that "all further terms and conditions of this contract shall occur by mutual agreement between the said parties by notice in writing". No evidence shows any written modification of the October 1979 agreement.

The record reveals at least two reasons for the dismissal of count six. First the trial court may have found the alleged agreement unenforceable because it was indefinite; that there was no agreement as to the share of participation. *See Savoca Masonry Company, Inc. v. Homes & Son Construction Company, Inc.*, 112 Ariz. 392, 542 P.2d 817 (1975); *Pyeatte v. Pyeatte*, 135 Ariz. 346, 661 P.2d 196 (App.

1982); *Correa v. Pecos Valley Development Corporation*, 126 Ariz. 601, 617 P.2d 767 (App.1980); *Aztec Film Productions v. Tucson Gas & Electric Co.*, 11 Ariz.App. 241, 463 P.2d 547 (1970). The second reason was the lack of evidence showing any agreement at all, i.e., a meeting of the minds.

Another reason urged for dismissal was the statute of frauds. The appellee claims that the alleged agreement would involve a transfer of land coming within the law enunciated in *Johnson v. Gilbert*, 127 Ariz. 410, 621 P.2d 916 (App.1980).

We agree that the dismissal was required for either of the first two reasons.

The evidence of the alleged oral agreement was too indefinite to be enforceable and the evidence was not sufficient to show an agreement in any event. We need not decide whether the alleged agreement was within the statute of frauds.

■ The final issue presented by the appellant concerns the trial court's refusal to compensate him for his time and expenses for Star Pass as a condition of the constructive trust.

The appellant testified that he paid expenses in the development of Star Pass from his own funds. He testified to the following amounts for the items indicated:

| | | | | |
|---|---|---|---|---|
| Travel, entertainment and lodging: | | 1980 | $17,302.58 | |
| | | 1981 | 20,657.88 | |
| | (Estimated) | 1982 | 20,000.00 | = $57,960.56 [sic] |
| Office rental, telephone and office | materials: | 1980 | $ 4,481.97 | |
| | | 1981 | 5,790.62 | |
| | (Estimated) | 1982 | 5,790.62 | = $16,063.21 |
| Miscellaneous: | | 1980 | $ 2,058.94 | |
| | | 1981 | 5,832.12 | |
| | | 1982 | 5,832.12 | = $13,723.18 |
| | | TOTAL EXPENSES: | | $108,752.24 [sic] |

Hauff also testified that he spent 2,900 hours working on the project over the three years. He valued his time at $100 per hour, but for the purposes of estimating reduced this to $50 × 2,900 hours, producing $145,000 for a total of $253,752. No other evidence contradicted this testimony although cross-examination revealed that some of the expenses may have been paid by the Hauff-Voorlas joint venture. Also other evidence showed Hauff was still working for Skyline (Edwards) during part of this time with the fringe benefits associated with that position. Further, at least some, and apparently a large part, of the expenses were attributable to the fact that his family home was in Vancouver, British Columbia.

The trial court allowed Hauff no credit for any of these amounts. This question was not presented to the jury. The only verdict forms given them were "for the plaintiff" and "for the defendant". They

found for the plaintiff. The law concerning these claims was not addressed in the court's instructions. The judgment provided:

"1) That any legal or equitable interest held by defendants Brian L. Hauff, Beverly J. Hauff or Intrex Corporation in and to the real property described in Exhibit "A", attached hereto and incorporated herein by this reference, together with any interest held by defendants Brian L. Hauff, Beverly J. Hauff or Intrex Corporation in Trust No. 2191 of Stewart Title & Trust of Tucson, is held in trust for the use and benefit of plaintiffs.

2) That plaintiffs are entitled to a conveyance or assignment from defendants Hauff and Intrex of all of their interest, legal or equitable, in and to said real property, or in said Trust No. 2191.

3) That defendants Brian L. Hauff, Beverly J. Hauff and Intrex Corporation shall

execute such conveyance or assignment to plaintiffs of said defendants' interest in said real property and said Trust No. 2191.

4) That defendants Brian L. Hauff, Beverly J. Hauff and Intrex Corporation are permanently enjoined and restrained from asserting any estate, right, title, lien or interest in or to said real property, or any part thereof, adverse to the rights and claims of plaintiffs in or to said real property.

5) That defendants take nothing by their counterclaims."

Both parties have referred us to the Restatement of Restitution (1937) as authority for their respective positions on this issue and we find that authority very informative on the legal questions presented. Section 160 defines "constructive trust", the remedy used by the court in this case, and explains when it is employed. That section provides:

> "Where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it, a constructive trust arises."

We discussed this section in *Cordoba v. Wiswall*, 7 Ariz.App. 144, 436 P.2d 922 (1968). *And see Bowen v. Watz*, 5 Ariz. App. 519, 428 P.2d 694 (1967).

Section 177 is a general statement concerning restoration as a condition of restitution. This is the subject matter of this last issue, whether Edwards must be ordered to pay any or all of the expenses claimed by Hauff as a condition of receiving Hauff's interest in Star Pass. That section provides:

> "Where the right to restitution is dependent upon restoration by the person seeking restitution, he cannot enforce a constructive trust without making restoration."

Comment (a) to this section contains the following:

> "As to whether and to what extent the transferor who seeks restitution of property must reimburse the defendant for improvements made upon or expenses incurred with respect to the property, see § 158."

Section 158 then provides:

> "A person is entitled to specific restitution of property from another or to the product of such property only on condition that he compensate the other for expenditures with reference to the subject matter which have inured to his benefit, *to the extent that justice between the parties requires.*" (Emphasis supplied)

The comment to this section then contains principles which we find supportive of the trial court's decision. Thus it is said that if the conduct of the recipient (Hauff) was tortious, he should bear any losses resulting from the transaction and should not benefit from profits. Although the comment does not specifically discuss compensation for expenses of the type claimed in the instant case, it does say with regard to repairs made on the subject property that if the conduct was tortious, restitution is obtainable only to the extent the repairs have increased the value of the property. And as concerns improvements or additions to the property, a conscious wrongdoer (an apt description of the appellant here) is ordinarily not allowed compensation. The comment reasons that it would ordinarily be unjust to require the owner (Edwards) on regaining his property to pay for improvements which he might not have desired. This latter principle is most analagous to the facts of the instant case. No evidence shows that the expenses claimed by Hauff increased the value of Star Pass, or that Edwards would have desired Hauff to make the expenses or perform the services. *See 319 East 72nd Street Corporation v. George W. Warnecke & Company*, 20 A.D.2d 513, 244 N.Y.S.2d 604 (1963) wherein an agent in breach of his fiduciary obligations was required to hold in constructive trust for his principal real property which had been improved by the construction of a valuable apartment building with substantial equity. *And see Sullivan v. Wellborn*, 32 Cal.2d 214, 195 P.2d 787

378

(1948); *Henderson v. Hassur*, 225 Kan. 678, 594 P.2d 650 (1979); *Strickland v. Arnold Thomas Seed Service*, 277 Or. 165, 560 P.2d 597 (1977); *Scally v. Josselson*, 224 Pa.Super. 309, 306 A.2d 322 (1973) and *Farrell v. Score*, 67 Wash.2d 957, 411 P.2d 146 (1966); *Rushing v. Stephanus*, 64 Wash.2d 607, 393 P.2d 281 (1964).

We distinguish *Birt v. Birt*, 102 Ariz. 374, 430 P.2d 136 (1967) since it did not involve a tortious, conscious wrongdoer.

Bogert recognizes that for expenses to be recovered by the party at fault, the expenses must have preserved and maintained the property. G. Bogert and G. Bogert, *The Law of Trust and Trustees*, § 472 (rev. 2d ed. 1978). Given as examples are taxes, interest and mortgage principal. Also recognized is the exception to the general rule of reimbursement that where the property was acquired by fraud or in bad faith, reimbursement for expenses, even for the price paid, may be denied. Bogert cites, along with other cases, *Bolton v. Stillwagon*, 410 Pa. 618, 190 A.2d 105 (1963) and *Ward v. Taggart*, 325 P.2d 502 (Cal.App.1958). Regarding services performed by the constructive trustee, Bogert states:

> "The better view would seem to be that the constructive trustee should be denied compensation for his services in managing, maintaining or improving the property, in order to discourage unscrupulous persons from securing or retaining property to which they are not equitably entitled, and there are holdings to this effect which seem preferable to contrary decisions." § 472 at p. 59.

*See Davidson v. Streeter*, 68 Nev. 427, 234 P.2d 793 (1951); *Merchants Credit Ass'n of United States v. Brown*, 83 Cal.App.2d 296, 188 P.2d 558 (1948).

We find good reasons for the trial court to deny the appellant any reimbursement. The conduct of the appellant in transfering his principal's interest in the property secretly and in furthering that scheme while still employed by his principal stands out as a compelling reason, and in addition, the nature of the claimed expenses is surely another.

Affirmed.

HATHAWAY and HOWARD, JJ., concur.