[Civil No. 4480. Filed October 5, 1942.]

[129 Pac. (2d) 666.]

H. L. GARDNER, Appellant, v. C. H. TRIGG, Appellee.

Mr. J. Fred Hoover and Mr. John A. McGuire, for Appellant.

Mr. Ray C. Bennett, for Appellee.

LOCKWOOD, C. J.—C. H. Trigg, plaintiff, brought suit against H. L. Gardner, defendant, upon a certain written promise to pay, which is hereinafter set out. Defendant answered, claiming (a) that the promise to pay was conditional only and out of a specified fund which had ceased to exist, and (b) that the obligation had been paid by the sale of certain property. He also filed a cross complaint for goods sold and delivered by him to plaintiff, and later filed a second, third and fourth cross complaint, which last three were stricken by the court.

The case was tried to the court without a jury, and judgment rendered in favor of plaintiff on his complaint and against defendant on the cross complaint, whereupon this appeal was taken.

The written agreement upon which the complaint was predicated reads as follows:

"Yuma Arizona
"June 5, 1935

"One year after date, for value received, I promise to pay the Yuma Sand and Gravel Company, a corporation, the sum of $532.60, with interest at rate of 6% per annum from date until paid, payable at Yuma, Arizona, in the manner and from the fund hereinafter specified.

"It is mutually agreed and understood between the maker of this note and the payee that the maker is employed under a contract of employment by Luke Ellison to operate the sand and gravel business, leased by the said Luke Ellison from the Yuma Sand and Gravel Company, and the said Luke Ellison agrees to pay to the said Yuma Sand and Gravel Company, payee in this note, 40% of the earnings of the said maker of this note as such manager and operator of said gravel plant to be applied as credits hereon, and also to pay to the Yuma Sand and Gravel Company all bonuses or extra payments earned by said maker as credits upon this note. Both*e* this note and the employment agreement between maker and said Luke Ellison may be renewed at the end of each year until paid in full, and in the event that said Yuma Sand and Gravel Company pit is sold any unpaid balance on this note shall be cancelled and discharged; should the maker of this note voluntarily quit his employment in said gravel pit, then and in such event, this agreement as to method of payment of this note shall be cancelled and the balance remaining unpaid on this note shall thereupon immediately become due and payable at the option of the holder thereof. Notice of exercise of such option to be given the maker by registered mail, addressed to his last known address.

"The maker of this note waives diligence, presentment and protest and agrees that if the said note not be paid according to the terms and effect thereof and shall be placed in the hands of an attorney for collection, to pay an additional sum of $50.00 in addition to the amount due thereon as an attorney's fee; payable in good and lawful money of the United States.
"(Signed) H. L. Gardner."

It is the claim of plaintiff that this was an unconditional promissory note sold to him by the payee therein, Yuma Sand and Gravel Company.

It is the position of defendant that it was an agreement to pay upon certain conditions only, and that it was not pleaded nor proved that those conditions had been fulfilled.

We consider first the question of the nature of the agreement. Section 52–101, Arizona Code 1939, sets forth the requirements for a negotiable instrument, and reads so far as material as follows:

> "*Requirements for negotiability.*—An instrument to be negotiable . . .
> "Must contain an unconditional promise or order to pay a sum certain in money;
> "Must be payable on demand or at a fixed or determinable future time and to the order of a specified person or to bearer;"

■ Upon an examination of the instrument in question it appears ·clearly that the promise to pay is not to "the order of a specified person or to bearer," but to a specified person alone. It, therefore, is not negotiable in its nature. *General Motors Acceptance Corp.* v. *Salter,* 172 Ark. 691, 290 S. W. 584; *Clay-Butler Lbr. Co.* v. *Pickering Lbr. Co.,* (Tex. Com. App.) 276 S. W. 664; *Haggard* v. *Mutual Oil & Ref. Co.,* 204 Ky. 209, 263 S. W. 745; *In re Fearing's Estate* 138 App. Div. 881, 123 N. Y. Supp. 396.

The question then is whether the promise to pay is an unconditional one, or one payable only under certain specified conditions.

■ ■ Plaintiff urges that while the promise to pay indicates a particular fund out of which the payment is to be made, it does not state expressly that it is payable *only* out of that fund. We, therefore, examine the promise to pay to see whether the reasonable construction of the instrument is that it was to

be paid only in the manner provided therein, or whether this was optional with the payee. The instrument was prepared by counsel for the payee, and is, therefore, to be construed most strongly against the latter. *Hoover* v. *Odle,* 31 Ariz. 147, 250 Pac. 993. It states "I promise to pay . . . in the manner and from the fund hereinafter specified," and then set forth that the maker of the note is employed by one Luke Ellison, and that a certain percentage of the earnings of the maker, under such contract of employment, is to be applied upon the note. Were this all, it might perhaps be said that the note was an unconditional promise to pay and the provision in regard to the Ellison employment was a collateral one, providing only for the application of the maker's wages to the note. However, the following provision

"should the maker of this note voluntarily quit his employment in said gravel pit, then and in such event, this agreement as to method of payment of this note shall be cancelled and the balance remaining unpaid on this note shall thereupon immediately become due and payable at the option of the holder thereof,"

to our minds clearly indicates that so long as the maker did not voluntarily quit his employment by Ellison, he could not be called upon to make any payments upon the agreement except from his salary from Ellison.

The evidence in regard to the whole transaction, taken in the strongest manner in behalf of plaintiff, may be stated as follows: Yuma Sand and Gravel Company was a corporation organized under the laws of the state of Arizona in 1929. At that time, plaintiff, defendant, Ellison and one Simpkins were each the owner of one hundred shares of stock. The corporation was operating a sand and gravel pit in the state of California. At some time in 1935 plaintiff acquired defendant's stock. The agreement sued on was exe-

cuted on June 5, 1935, and apparently was in satisfaction of some transactions between plaintiff and defendant, for the same date the following release was executed:

"State of Arizona ⎫
"County of Yuma ⎭ Release

"For and in consideration of the sum of $1.00, cash in hand paid, and the mutual settlement of all of our legal matters heretofore existing between us, I do hereby release, acquit and discharge H. L. Gardner from any and all claims, suits and demands of every nature that I have had, may now have, or may in the future discover against the said H. L. Gardner from the birth of Christ to the death of the Devil.

"Dated the 5th day of June, 1935.

"(Signed) C. H. Trigg."

Ellison continued to operate the plant under the agreement aforesaid for some thirty to sixty days. At the end of that time apparently he ceased operations and the property was turned over to plaintiff, who continued to operate it from time to time. There is nothing in the record to show that Ellison's abandonment of his contract was in any manner contributed to or brought about by defendant.

Plaintiff insists that after Ellison abandoned his contract, defendant was offered a chance to continue at work under plaintiff, but refused to do so. Defendant denies this. Be this as it may, it is immaterial, for it is only in case defendant voluntarily abandoned his employment *under Ellison* that the note became due unconditionally. Since, in order to obtain a general judgment against defendant, it was necessary for plaintiff to show that the fund from which payment was to be made had failed through defendant's fault, and no such fault was either pleaded or proved, the judgment on plaintiff's complaint cannot stand.

It is also contended by defendant that even though the pleadings and proof may show that the Ellison

employment ceased through defendant's fault, the note was paid because the ownership of the pit changed hands, and the agreement expressly provides ''in the event that said Yuma Sand and Gravel Company pit is sold any unpaid balance on this note shall be cancelled and discharged.'' In view of what we have already said we need not now consider this question.

The rulings of the court on the various cross complaints, however, were strictly in accordance with the law.

The judgment is reversed and the case remanded with instructions to render judgment for defendant upon plaintiff's complaint, and for plaintiff on defendant's cross complaint.

McALISTER and ROSS, JJ., concur.