428 P.2d 694

Roy V. BOWEN and Ernest L. Olrich, Jr., Appellants,

v.

Edward WATZ and Florence Watz, husband and wife, Southwestern Land Co., an Arizona Corporation, John Doe, Jane Doe, and XYZ Corporation, Appellees.

No. 2 CA–CIV 110.

Court of Appeals of Arizona.

June 6, 1967.

Rehearing Denied July 27, 1967.

Review Denied Oct. 3, 1967.

Miller & Pitt, by Donald Pitt, Tucson, for appellant Bowen.

Dunseath, Stubbs & Burch, by Dean Burch, Tucson, for appellant Olrich.

Chandler, Tullar, Udall & Richmond by Robert S. Tullar, and Nolen L. McLean, Tucson, for appellees.

KRUCKER, Judge.

This is an appeal from a judgment, adverse to the plaintiffs, rendered in the Superior Court of Pima County. The plaintiffs' cause of action, basically, was that they had joined with the defendant Edward Watz and the Southwestern Land Company for the purpose of acquiring and then selling, at a large profit, certain undeveloped land in New Mexico. The agreement between the parties was evidenced by a memorandum drawn by the attorney for Mr. Watz. In the Superior Court, the plaintiffs asked that the contract be construed, a constructive trust be imposed on the New Mexico land, that the duties of the defendants under the contract be adjudicated as to disposition of the land, and that the plaintiffs be awarded damages for breach of the aforementioned contract.

The plaintiffs were joint owners of a contract to purchase some 25,662 acres of undeveloped land in Luna County, New Mexico. They had invested $5,000.00 each, as earnest money, and a balance of $140,000.00 was required to close the deal. The purchase agreement was to expire November 21, 1959. On November 10, 1959, the plaintiffs agreed with Edward Watz that Watz would finance the purchase through the Southwestern Land Company, a corporation controlled by Mr. and Mrs. Watz and their attorney, Nolen McLean. Mr. McLean drafted a memorandum (set forth in part, infra), which all parties agree represents a fair embodiment of their agreement. Although all parties expected that a quick sale could be made, it was impossible to obtain an offer satisfactory to all, and the land has remained unsold.

From September 1960 to December 1960, the defendants demanded that the plaintiffs pay one-half of the taxes on the property and one-half of the interest on the loan of $150,000.00 which Watz had made to the

Southwestern Land Company to finance the deal. The plaintiffs refused to pay, taking the position that there was no duty on their part to pay any such expenses. On July 17, 1960, Nolen McLean, as vice president of the Southwestern Land Company, executed a note and mortgage for the sum of $150,000.00 in favor of Edward Watz, doing business as Watz Realty and Mortgage Company, without notice to the plaintiffs. On December 17, 1960, Southwestern Land Company, without the consent of or any notice to the plaintiffs, executed a deed in lieu of foreclosure to Mr. and Mrs. Edward Watz, transferring to them the title to the Luna County land. Displeased by this turn of events, the plaintiffs brought this suit.

After a trial to the court, judgment was given for the defendants on all issues, the court having made certain findings of fact and conclusions of law. Basically, the court found that the plaintiffs had no rights under the memorandum of agreement because neither it nor any of the other evidence established a relationship of joint venture between the plaintiffs on one side and the defendants Watz and Southwestern Land on the other. The court likewise found that there was no other basis for the imposition of fiduciary duties upon the defendants. We disagree.

In relevant part, the memorandum provided:

"1. First Parties agree to instruct their Trustee, J. A. Gibbons, to execute such necessary documents as may be required to enable the Third Party, to take title to the aforesaid New Mexico real estate.

"2. Second Party agrees to lend $150,000.00 interest free, for a period of six months, to the Third Party to facilitate said transaction.

"3. Third Party agrees:

(a) to take title to said real estate in its own name;

(b) to pay the purchase price of $150,000.00 when the deal is ready for closing (which includes the reimbursement of the $10,000.00 to First Parties);

(c) to employ First and Second Parties, jointly, as its exclusive agents to sell said property, or portions thereof.

(d) to pay its said agents, jointly, a 5% commission on all sales of said property, or portions thereof, in cash, one year from the execution date of said sale or sales;

(e) to hold, in trust, for First and Second Parties, jointly, as security for their commissions, such residue of real estate and monies as may remain after repayment of the loan aforesaid, and all such other advances and expenses incurred by the Third Party as may be directly chargeable to this transaction, including, but not limited to taxes, interest on any monies borrowed by the Corporation after six months from date, title expenses, document stamps, etc., but excluding operating overhead of the corporation;

(f) to transfer over to First Parties and Second Party each an undivided one-half of any residue remaining after the obligations mentioned hereinabove in Paragraph (e) (exclusive of commissions) have been satisfied and paid upon the demand of the Second Party. But until such demand is made (after said obligations have been paid) to divide the net proceeds from all sales, 50% to the First Party and 50% to the Second Party.

"4. First and Second Parties agree with Third Party, and each other, that except for an interest in potential commissions, neither First Parties nor Second Party has any interest in the said real estate, except a possible interest which will mature only after Second Party is repaid his loan and Third Party has been reimbursed for its expenses as hereinabove provided for in paragraph 3(e)."

Since all parties have agreed that the memorandum reflects accurately the intentions of the participants, and since we are not bound by the findings of the trial court on questions of law or mixed ques-

tions of law and fact, Tovrea Land and Cattle Company v. Linsenmeyer, 100 Ariz. 107, 412 P.2d 47 (1966), we are free to make our own interpretation of the agreement. T. D. Dennis Builder, Inc. v. Goff, 101 Ariz, 211, 418 P.2d 367 (1966). In so doing, we do not find it necessary to decide whether a joint venture was actually created because " * * * the land trust agreement itself supplies the answer to the test,". *Ditis v. Ahlvin Const. Co.*, 408 Ill. 416, 97 N.E.2d 244, 249 (1951).

That agreement, as noted before, imposes upon the Southwestern Land Company the duties of trustee. Paragraph 3 states that Southwestern is to hold " * * * in *trust* for First and Second Parties, jointly, as security for their commissions, such residue of real estate and monies as may remain after re-payment of the loan aforesaid * * * "; (emphasis added) Southwestern is to "transfer over to First Parties and Second Party each an undivided one-half of any residue remaining after the obligations * * * have been * * * paid * * * ".

The references to "residue" indicate to us that, although paragraph 4 states that " * * * neither First Parties nor Second Party has any [present] interest in the said real estate", it might happen that some of it would go unsold; in that case, the residue would be transferred " * * * to First Parties and Second Party each an undivided one-half." Additionally, paragraph 4 goes on to state that the parties may have a "possible interest which will mature only" after repayment of the loan to Watz and of Southwestern's expenses.

■ The intent of the agreement, which must be construed if ambiguous, against the defendants, Gardner v. Trigg, 59 Ariz. 397, 129 P.2d 666 (1942), seems to be:

1. Plaintiffs and Edward Watz felt that there was money to be made in the resale of the Luna County land, probably within a short period of time.

2. The plaintiffs were not able (or willing) to invest further, but were willing to divide the potential profits with a financier if he would finance the deal and return to them their original investment of $10,000.00.

3. Edward Watz thought the deal to be potentially profitable, but wanted to protect his investment as fully as possible by providing for repayment of his expenses out of profits before any further division.

4. The Southwestern Land Company was to have no interest in the deal except to hold, for the parties, legal title to the land until a satisfactory sale could be made.

5. The purported renunciation of all interest in the land, a common clause in land trust agreements, was an attempt to limit personal liability of the other parties until a sale was made.

6. The provisions for employing the parties as agents (including Edward Watz),[1] another common provision, was for the purpose of strengthening Southwestern's claim to legal title and probably for the allocation of income taxes. (It is to be noted that Watz had discretion as to when these "commissions" were to be paid under paragraph 3(f) of the memorandum.)

It is difficult, taking this line of reasoning, to interpret the agreement as defendants would have us do: merely as one of employment, subject to unilateral termination by the Southwestern Land Company. Since, as we believe, the agreement created more than a mere "potential" interest in the land which would accrue only after sale, the plaintiffs, as beneficiaries of the land trust, had rights which Southwestern, as trustee, violated by conveying the land in lieu of foreclosure.

The Restatement of Trusts (2d) declares that:

§ 183:

The trustee is under a duty to deal impartially if there are two or more beneficiaries to a trust.

---

1. It does not appear that Edward Watz took a very active part in the selling of the land, yet, under the agreement, he was *employed* as an agent.

§ 342, comment g:

A trustee may not transfer the trust property to or at the direction of one beneficiary without the consent of the other beneficiaries.

§ 170, comment b:

Also, the trustee may not usually purchase trust property himself.

§ 170, comment d:

Nor may a corporate trustee sell property to one of its officers or directors.

§ 190, comment i:

And a trustee, if it is necessary to sell trust property, must endeavor to get the best possible price for it.

■■■ As can be seen from the above principles, the Southwestern Land Company, as trustee, had the duty to protect the interests of the plaintiffs as well as those of Edward Watz. Since the agreement did not specify any particular time for the accomplishment of its purposes, it must be interpreted as lasting for a time reasonable under the circumstances, or until the arrangement became impossible or too costly. See Krueger v. Young, 406 S.W.2d 751 (Texas Ct. of Civil Appeals, 1966). Even if we were to assume that, because of the condition of the New Mexico land market, it had become financially infeasible to continue the arrangement, the trustee should have obtained the consent of all the beneficiaries to a termination of the trust. Restatement (Second), Trusts § 337. Pursuant to a termination, an attempt should have been made to sell the land at the highest possible price.[2]

■ It is also within the power of the court to terminate a trust such as this upon the request of the trustee and against the wishes of some of the beneficiaries if it becomes impossible of fulfillment. Restatement (Second), Trusts § 335. Upon a sale of the property, the claims of Southwestern for its expenses and Watz for interest could have been adjudicated, and one-half of these deducted from the plaintiffs' share of the proceeds.

■ In resolving this case as we have, we are aware that most of the evidence taken below and most of the argument on appeal was concerned with the question of whether the parties had formed a joint venture. The basis for such a theory was, of course, the agreement referred to above. The complaint in its final form asked that this agreement be construed and the rights and duties of the parties be declared. Declaratory relief is generally held to encompass all the rights inherent in a contract. See Zimmer v. Gorelnik, 42 Cal.App.2d 440, 109 P.2d 34 (1941). From an examination of the transcript, it is easy to understand that the plaintiffs could have misled the trial judge into concentrating too much on their theory of joint venture. The pretrial memoranda (in addition to the agreement), however, make mention several times of the status of the Southwestern Land Company as trustee. One of the court's conclusions of law states:

"* * * the Court holds that a confidential relationship did not exist between the parties at the time of transfer."

We must presume from this statement that the trial judge examined the memorandum in full before he made this determination.

■■ Since, as we have determined, the Southwestern Land Company acted in breach of trust in conveying the Luna County land to Edward Watz; and since Edward Watz (being party to the trust agreement) must be charged with knowledge of its breach, it follows that the defendants Watz must be held to be constructive trustees of the land, together with any proceeds from the use thereof, such as rent, which have been received in the

2. There was uncontroverted evidence presented by the plaintiffs that the fair market value of the New Mexico land was $375,000.00 as of December 31, 1960. While we do not hold this sum could have been realized, it is some indication that the conveyance of the land to extinguish indebtedness of $150,000.00 was not the best price which Southwestern could have obtained on the open market.

meantime, for the benefit of the original beneficiaries. Restatement (Second), Trusts § 288; Restatement, Restitution § 168. As constructive trustees, the Watzes may be compelled to perform such further acts of restitution as the Superior Court may deem just. See Bogert, Trusts & Trustees § 472 (1960); Restatement (Second), Trusts § 291.

As there are no pleadings requiring it, we do not now pass upon any claims which any of the parties may have for expenses incurred, or otherwise, in connection with the constructive trust established. See, in general: Restatement, Restitution § 158, comment b; Restatement (Second), Trusts § 291.

Reversed and remanded to the Superior Court of Pima County for proceedings consistent with this opinion.

HATHAWAY, C. J., and MOLLOY, J., concur.